McLAUGHLIN, Appellant, *v.* CORCORAN, Respondent.

(No. 7,634.)

(Submitted May 4, 1937.   Decided June 4, 1937.)

[69 Pac. (2d) 597.]

*Messrs. Molumby, Busha & Greenan,* for Appellant, submitted an original and a reply brief; *Mr. L. J. Molumby* argued the cause orally.

*Mr. George E. Hurd, Mr. Frank Polutnik, Jr.,* and *Mr. J. H. Corcoran,* for Respondent, submitted a brief; *Mr. Hurd* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to quiet title to two lots in the city of Great Falls. His complaint was in the usual short form in actions of this character. Defendant's answer was in the form of a creditor's bill. The reply raised certain issues with the allegations in the answer. Since no question is here raised as to the sufficiency of the pleadings it is unnecessary to note the allegations in detail.

The cause was tried before the court sitting without a jury. Extensive and numerous findings of fact were made. The conclusions of law determine the case in favor of the defendant; judgment was entered in conformity therewith. The appeal is from the judgment.

From September 10, 1930, until June 30, 1931, H. B. Lake & Company was a copartnership composed of H. B. Lake, Cora L. Lake, his wife, Clarence D. Lake, their son, and Helen Lake Bechtold, their daughter. On September 10, 1930, Bertha Steege and Winnie Steege were the owners of a contract to purchase these lots from the Great Falls Townsite Company and on that day conveyed them to Harold Bechtold, the husband of Helen Lake Bechtold. A check of the copartnership for $1,500 was delivered to Winnie Steege, which was subsequently cashed. Bechtold paid no money for the purchase of the lots. The copartnership expended in payment of the costs of construction of a residence on the lots, in landscaping the ground, in maintenance, repairs and taxes, the sum of $21,622. This property was carried on the books of the partnership as one of its assets. On June 30, 1931, H. B. Lake & Company, a corporation, was organized under the laws of Montana. On February 16, 1932, Harold Bechtold conveyed the property to this corporation without any consideration whatever. This deed was recorded April

22, 1932, and on that day the corporation conveyed the property to Helen Lake Bechtold without any consideration. She on July 18 thereafter conveyed the property to H. B. Lake, her father, without any consideration.

After the organization of this corporation the sum of $1,500.44 was expended on the property for taxes, maintenance and repairs. The property was carried on the books of the corporation as an asset. The insurance premiums were paid by the copartnership and later by the corporation. On April 17, 1933, an involuntary proceeding in bankruptcy was filed against H. B. Lake & Company, the corporation. It was adjudged a bankrupt on May 3, 1933. Warren Toole was appointed trustee and qualified as such on May 29 of that year. Prior to that time he had been appointed and qualified as receiver in bankruptcy for the corporation. H. B. Lake on April 27, 1933, delivered the deed mentioned supra from his daughter to himself, which had not been recorded, and another by himself and wife conveying the property to the corporation, unto Warren Toole as receiver.

The trustee sold and conveyed these lots to the plaintiff as a part of the assets of the corporate estate. Prior to the confirmation of this sale, the defendant served notice upon the trustee and referee in bankruptcy to the effect that he had theretofore secured a judgment against H. B. Lake individually, and caused execution to be issued on that judgment which had been levied on the property, and that he claimed the property belonged to Lake individually.

The defendant had on February 26, 1933, commenced an action in the district court of Cascade county against H. B. Lake and others. The action was later dismissed as to all of the defendants except H. B. Lake. A judgment was entered against Lake on July 29, 1933, in the sum of $11,481.50, which was never appealed from, reversed or set aside. An execution was issued out of that court on the date of the entry of the judgment which was levied on the property in question and also on some additional property, from the sale of which the sum of $934.10 was

obtained and credited on the execution. At the time of the execution and delivery of the deed by Lake and wife to the receiver, H. B. Lake was insolvent.

All of the foregoing facts were found by the trial court, and no error is assigned on any of these findings. The court also found that H. B. Lake at the time of the conveyance and commencement of the action by the defendant against him, was the owner of these lots; that by the levy of the execution on the lots they became subject to the lien of this judgment; that the deed from Lake to the corporation was delivered with intent to defraud the defendant and was therefore void; that the trustee knew that Lake was insolvent, and that the interest of the defendant in the lots was superior to the claim of the plaintiff. Plaintiff assigns error upon all these findings and on the failure of the court to adopt certain proposed findings.

Certain other facts appear from the record which are not subject to serious dispute, as follows: All of the stockholders of the H. B. Lake & Company were the Lake family, that is, those whom the court found were members of the copartnership. None of the deeds by which this property was conveyed made any mention of any trust in connection with the property. The deed from the corporation to Helen Lake Bechtold was executed on behalf of the corporation by H. B. Lake, its president. He testified that all of the individual grantees in these various conveyances by oral agreement held the property in trust for the partnership or the corporation, but that no written declarations of trust were ever made; that it was deemed unnecessary, as it was all a family affair.

Plaintiff contends that Bechtold held the property under a resulting trust in favor of the partnership and after its organization, in favor of the corporation. When he conveyed it to the corporation the trust terminated. That the other grantees held the property as trustees of a constructive trust or trusts, since a corporation may not give away its property. And lastly he contends that even though there was no constructive trust or trusts, H. B. Lake conveyed the property in the discharge of a

moral obligation arising out of what is sometimes referred to as a "parol express trust," which is unenforceable by reason of the statute of frauds, but which is a sufficient consideration as against the attack of creditors of a grantor seeking to set aside a conveyance as fraudulent.

The defendant contends, as to the asserted resulting trust in Bechtold, that since he was a son-in-law of Lake, the transfer was presumed to be a gift, and no resulting trust ensued; that if a trust resulted it is immaterial, since it was fully performed by Bechtold and therefore terminated; or that the conveyance by Bechtold could not operate to satisfy the trust, inasmuch as it was not proved at the trial that the beneficial interest in the property was ever conveyed by the partnership to the corporation. As to the various alleged constructive trusts it is asserted they cannot prevail, since no active or constructive fraud was established on the part of any of the alleged trustees of constructive trusts, and since all that was attempted to be proved was a parol express trust which is unenforceable by reason of the statute of frauds. As to the theory that H. B. Lake conveyed to the corporation in performance of a moral obligation it is contended that no moral obligation was resting on Lake to convey to the corporation.

We proceed to the consideration of the contention with reference to the resulting trust in Bechtold. Where a transfer of real property is made to one person and the consideration therefor is paid by another, a trust is presumed to result in favor of the person making the payment. (Sec. 6785, Rev. Codes.) If, however, the consideration is paid by one who stands in close relation to the one in whose name the transfer is made, the presumption arises, rebuttable in character, that the transaction was a gift. (*Humbird* v. *Arnet*, 99 Mont. 499, 44 Pac. (2d) 756; *Roman* v. *Albert*, 81 Mont. 393, 264 Pac. 115; *Bast* v. *Bast*, 68 Mont. 69, 217 Pac. 345; *Clary* v. *Fleming*, 60 Mont. 246, 198 Pac. 546.) The cases are clear that this disputable presumption arises in transactions where the relationship is that of husband and wife and parent and child, but here

the grantee in the deed was the son-in-law of H. B. Lake, and the question arises, Does such relationship come within the rule heretofore announced by this court?

Preliminary to the consideration of this question it is well to consider certain facts which are undisputed in the record. Lake's daughter, Bechtold's wife, occupied the house on the property in question with her husband as a family residence until their divorce. H. B. Lake during the existence of the partnership and later during the active operations of the corporation kept all of the funds received by either in the bank account from which he drew funds, without let or hindrance from anyone, for his own personal use or pleasure.

It has been held in most, if not all, cases that a conveyance of property to a son-in-law by deed on behalf of the parent of the wife of the grantee comes within the rule, and the disputable presumption of a gift arises. (Perry on Trusts, 7th ed., sec. 144, p. 232; *Baker* v. *Leathers,* 3 Porter, (Ind.) 558; *Cole* v. *Thompson,* 169 Fed. 729; *Hawks* v. *Sailors,* 87 Ga. 234, 13 S. E. 638; *Heath* v. *Carter,* 20 Ind. App. 83, 50 N. E. 318.) In the circumstances of this case the presumption would arise that the transaction was a gift.

H. B. Lake testified that it was orally agreed that the property was to be held in trust. This evidence was admissible in confirmation of the presumption that a resulting trust arose and no gift was intended at the time of the transfer. The statute of frauds (sec. 6784, Rev. Codes) does not bar the admission of this testimony. (Bogert on Trusts, sec. 461, p. 1406.) Thus we first have a presumption that the transaction caused a trust to result which disappears when the other facts are considered from which the second presumption of a gift arises (*Johnson* v. *Kaiser,* ante, p. 261, 65 Pac. (2d) 1179), but for the testimony of H. B. Lake in aid of the first presumption. The corroborative testimony of Lake is somewhat weakened by the testimony of the witness Hill, who, so far as the record discloses, was disinterested, wherein he recounted a conversation between the defendant and Lake relative to the lawsuit then

pending in which judgment was recovered by the defendant. Concerning this conversation he testified as follows: ''They were talking about a lawsuit, and an action of some kind. At that time Mr. Corcoran said to Mr. Lake, 'I understand you are getting in a bad way financially; I would like to have you settle with me as you are liable to go broke.' Mr. Lake replied, 'If I ever go broke I will see that you don't get any money.' Defendant's testimony was the same as to this conversation. No denial of it is found in the record by Lake or otherwise. Among the proposed findings on behalf of the plaintiff was one to the effect that a resulting trust arose from this transaction, which was apparently refused by the trial judge, as no such finding was made. It is a necessary implication from the findings and conclusions of the trial court that no trust resulted.

A disputable presumption is not overcome, as a matter of law, by positive testimony to the contrary by an interested witness, and in such circumstances a question of fact is tendered to be decided by the court or judge. (*Renland* v. *First Nat. Bank of Grass Range,* 90 Mont. 424, 4 Pac. (2d) 488; *Monaghan* v. *Standard Motor Co.,* 96 Mont. 165, 29 Pac. (2d) 278.) Since the trial court refused to find a resulting trust it decided this issue of fact against the presumption of a resulting trust aided by the testimony of H. B. Lake. It necessarily follows that the court did not believe Lake's testimony on this point. We are long committed to the rule that this court will not on appeal disturb the findings of a trial court unless they are contrary to the clear preponderance of the evidence. (*Nadeau* v. *Texas Co.,* ante, p. 558, 69 Pac. (2d) 586.) On the record before us we are unable to say that the evidence so preponderates.

Proceeding now to the theory of the constructive trust or trusts urged upon us by the plaintiff. Under the ruling of this court in the case of *MacGinniss Realty Co.* v. *Hinderager,* 63 Mont. 172, 206 Pac. 436, the plaintiff is foreclosed on this contention unless, as argued by the plaintiff, the rule that a corporation may not give away its assets alters the situation.

We will discuss this latter contention presently. In the *Hinderager Case* one MacGinniss was the president of the realty company. The court there said of the facts: "MacGinniss testified that he bought this land for the plaintiff, and it was further shown that in January, 1914, a deed was prepared for the purpose of conveying the land from MacGinniss to the plaintiff, which was signed by and left with him for the purpose of obtaining his wife's signature; but she never signed the same, and it was subsequently lost. After MacGinniss bought the land, the plaintiff had the possession and management of it through its officers, agents and employees, paid the running expenses, and received all the proceeds thereof. On December 15, 1914, the plaintiff paid to John MacGinniss the full sum of $4,500, which he had advanced as the purchase price of the land." In the course of its opinion the court further said: "The record title to the land having been in MacGinniss on May 6, 1914, and the defendant having acquired all his rights as of that date, the burden of defeating that title was upon the plaintiff. 'As in every instance where one person asserts a claim to an estate in opposition to the written title, so in this one must he assume and maintain the burden of proof, and the evidence in support of his claim must be clear, full and satisfactory; that is to say, there must be sufficient positive facts proven to take the case out of the realm of conjecture and speculation.' (*Eisenberg* v. *Goldsmith,* supra [42 Mont. 563, 113 Pac. 1127].) If the plaintiff had brought this suit against MacGinniss on May 6, 1914, for the purpose of enforcing its alleged equities in the land, it could not have prevailed upon any possible theory. It could not have shown a contract by him to convey the land to it; there was no trust agreement signed by him; the deed under which he held title did not declare a trust; neither plaintiff nor anyone in its behalf had paid any part of the purchase price of the land so as to create a resulting trust; and no actual or constructive fraud had been practiced by him so as to create a constructive trust. An attempt to enforce a conveyance from him on the theory that he was to take title to the land in his own name and then convey it to plaintiff would have been defeated for the

reason that such an agreement would be void under the statute of frauds."

The same situation prevails here. The record is barren of any evidence showing actual or constructive fraud by any of the alleged constructive trustees. So far as the testimony of Lake is concerned as to a parol agreement that the property was to be held in trust, such agreement, if any, is unenforceable under the statute of frauds. (Sec. 6784, Rev. Codes.) Hence there were no constructive trusts unless the corporation was powerless in the circumstances to make a gift to Helen Lake Bechtold.

Speaking generally, a corporation may not make a gift of its ██ property where it is not created for charitable purposes and where the gift is not made in expectation of pecuniary benefits. (Secs. 2939, 2940, Fletcher's Cyclopedia of the Law of Corporations; *McConnell* v. *Combination M. & M. Co.*, 30 Mont. 239, 258, 76 Pac. 194, 104 Am. St. Rep. 703, affirmed 31 Mont. 563, 571, 79 Pac. 248.) However, a corporation may make a gift of its property with the consent of its stockholders good as against all except existing creditors at the time the gift is made, and subsequent creditors may not successfully object. In the case of *City of Fort Worth* v. *National Park Bank*, 261 Fed. 817 (C. C. A.), the facts were these: Baldridge and Reid were partners in the cattle business in Texas; they organized a corporation and conveyed their property to it; they owned all of the stock of the corporation. After this transfer they became alarmed over the danger of losing title to some school lands which the corporation held under a contract to purchase from the state of Texas, by reason of certain statutory provisions which it was thought prohibited the holding of such lands in that manner by a corporation, rendering the title subject to forfeiture. Thereupon, to avoid the possible effect of these statutory provisions, Reid, on behalf and as president of the cattle company without any other consideration, conveyed these school lands to Baldridge who, in turn, conveyed a one-half interest in the lands to Reid without consideration. The cattle company continued to use these lands in its business, paying some taxes

and taking the profits of the land. A subsequent creditor of the corporation sought to hold this land for its debt. There the court said: "At the time it [the transfer] was made Reid and Baldridge owned all the stock of the cattle company. In the absence of objection by any one who was a creditor of the corporation at the time the deed was made, Reid, as president, could effectually make, in the name of the corporation, a deed of gift to its lands to himself and Baldridge. ([*Aransas Pass*] *Harbor Co.* v. *Manning*, 94 Tex. 558, 63 S. W. 627; *Taylor Feed Pen Co.* v. *Taylor Nat. Bank*, (Tex. Civ. App.) 181 S. W. 534.)''

In this case the members of the Lake family were the directors and stockholders of the corporation. H. B. Lake was president. He used the assets of the corporation for his personal use without objection from the directors or stockholders, so far as disclosed by the record. It appears that he did what he saw fit with the affairs of the corporation—at least with the acquiescence of the other members of the family. He executed a conveyance to Helen Lake Bechtold as president of the corporation. Therefore the stockholders were estopped to question the validity of the transfer as a gift under the ruling of this court in the case of *Edwards* v. *Plains Light & Water Co.*, 49 Mont. 535, 143 Pac. 962, where, speaking with reference to the conduct of the president of the corporation, the court said: "The fact that he is permitted by the board of directors to occupy the position of such an agent, carries with it the implication that he has been clothed by it with all the powers necessary to enable him to carry forward the ordinary business of the corporation; and when, as in this case, the board of directors, the members of which hold all the shares, either by direct action evidenced by a by-law or a resolution, or by continued acquiescence, authorizes or permits the president to exercise all its powers and functions, the board itself remaining entirely inactive, he becomes, for the time being, the board of directors, with all the powers it possesses, and the corporation cannot thereafter question the validity of any act done by him within the scope of its legal powers.''

The record does not show that there are any creditors of the corporation who were such at the time of the transfer by the

corporation to Helen Lake Bechtold. Hence a gift by the corporation was valid on the facts in this record and no constructive trust would arise on this theory.

We now come to the contention relative to the conveyance by H. B. Lake to the corporation and that the performance of a moral obligation is a sufficient consideration to ward off the attack of creditors on the ground that it was a fraudulent conveyance.

As to transfers of property where it is established that the consideration is the performance of a moral obligation, the decided cases are in conflict on the question whether it is sufficient to prevent creditors from setting aside the conveyance on the ground of fraud. (27 C. J. 527; Moore on Fraudulent Conveyances, 295.) But an unbroken line of decisions holds that, as applied to parol express trusts which are unenforceable under the statute of frauds, the moral obligation is a sufficient consideration to prevent creditors who have acquired no valid lien on the property prior to the conveyance from setting aside such transfer. This rule was first announced by Vice Chancellor Leach, in England, in the case of *Gardner* v. *Rowe,* 3 L. J. Ch. (o. s.) 220, 2 Sim & St. 346, 57 E. R. 378, affirmed by Lord Chancellor Eldon, 7 L. J. Ch. (o. s.) 2, 5 Russ. 258, 38 E. R. 1024. Many of the American decisions adhering to this rule are collated in the note appearing in 64 A. L. R. 576. It is said that whatever may be thought of the rule on principle, it is too well settled in authority to be disregarded. *(Moran* v. *Morgan,* 252 Fed. 719 (C. C. A.) This court has recognized and applied the rule in the case of *National Bank of Anaconda* v. *Yegen,* 83 Mont. 265, 271 Pac. 612; but granting the soundness of the rule, which we are not disposed to question, Was any such moral obligation resting on Lake to convey to the corporation?

The solution of this question turns upon the disposition of the testimony of Lake on the subject. He testified positively that the property was to be held in trust. As we have said, this testimony was weakened by his avowed determination to prevent the defendant from collecting his money; also, his

testimony on the subject was a statement amounting to no more than his conclusion of fact; the detailed facts and circumstances from which the conclusion might be drawn were absent. The trial court, as we have found, did not believe the testimony of this witness with reference to the resulting trust, which was part of the same sentence, at least in one instance, as was the testimony of the same witness given relative to the question at hand. If the trial judge did not believe his testimony in the one instance, no valid reason may be suggested why he would believe it in the other. We must therefore conclude, in view of the findings and conclusions, that the trial court disbelieved the testimony of Lake relative to the parol express trust. Courts may reject the most positive testimony though the witness be not discredited by direct evidence impeaching him or contradicting his statements. The credibility of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears. It is swearing credibly that is to conclude their judgment. (*Casey* v. *Northern Pac. Ry. Co.*, 60 Mont. 56, 198 Pac. 141.)

Some circumstances exist in this case which we have indicated supra, which tend to support the finding or conclusion of the trial court in this respect. As to whether we would on the same record have reached the same conclusion it is unnecessary for us to decide, for under the oft-repeated rule it is only where the evidence clearly preponderates against the finding of the court that we may reverse. In this case for us to conclude contrary on this question to the decision of the trial court would be but for us to substitute our judgment for that of the lower court, but such conclusion would not justify a reversal of the judgment in this case.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART and MORRIS, and HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.

Rehearing denied June 21, 1937.