O'SULLIVAN, APPELLANT, v. SIMPSON ET AL., DEFENDANTS.

No. 8890.
Submitted September 28, 1949. Decided December 12, 1949.
212 Pac. (2d) 435.

Mr. Ralph J. Anderson and Mr. Albert C. Angstman, both of Helena, for appellant. Mr. Anderson argued orally.

Messrs. DeKalb, Ulsaker and Symmes, Lewistown, for respondent. Mr. H. Leonard DeKalb argued the cause orally.

MR. JUSTICE METCALF:

Philipp Laux died testate on the 25th day of October, 1946.

His daughter Katherine Simpson, is executrix of the estate. The entire estate was willed to his wife, Kathi Laux. This is an action by another daughter, Francisca O'Sullivan, against Katherine Simpson and Kathi Laux to compel specific performance of an oral agreement allegedly made by the deceased to bequeath and devise to the plaintiff one-ninth of all his property.

The action was tried before the court without a jury and judgment was granted to the defendants. The court made findings of fact and conclusions of law which included a finding that the services which the plaintiff claimed to have rendered to the deceased were not unique, extraordinary or peculiar as is necessary to furnish the consideration for a contract of this kind. The court also found that the alleged agreement set forth by the plaintiff as a basis for her claim was never made by the deceased and found all material issues in favor of the defendants and against the plaintiff.

Error is assigned for the entry of these findings of fact and for the making and entering of the court's judgment against the plaintiff. The chief contention of the plaintiff-appellant is that the court's findings and judgment are contrary to the evidence.

The principal witness on behalf of the plaintiff was Emmet O'Sullivan, an attorney residing at Harlowton and the husband of the plaintiff. His is the only testimony which substantiates the material allegations of the complaint relative to the making of an oral contract to will a part of the estate to the plaintiff. He testified that in May 1929 he and the plaintiff were in Lewistown to call upon Philipp Laux. According to O'Sullivan's testimony Laux informed the witness that he was anxious to form a corporation which would hold all of the decedent's property. The witness testified that Philipp Laux desired the plaintiff to act as one of the incorporators and directors of the corporation to be formed, Laux and his wife Kathi to act as the other stockholders and directors. The witness O'Sullivan was asked to draw up a deed transferring all of Philipp Laux's property to Mrs. Laux and the plaintiff. O'Sullivan told Laux that when he got back to Harlowton he would draw the deed

and send it to him. Laux preferred that the deed be drawn immediately so the three of them went to the O'Sullivan home in Harlowton, Montana. Witness testified that on the way to Harlowton Laux said he did not want plaintiff to assume the responsibility or do all that work for nothing and that he wanted to protect her. Later on in the evening after they arrived in Harlowton, O'Sullivan testified that Philipp Laux again stated that he wanted the plaintiff adequately protected; that he wanted to make sure she was protected, and that the only way he knew of protecting her would be by taking care of her in his will. It was then that the witness alleges the agreement was made that the plaintiff would take the deed jointly with her mother for all the real estate belonging to Philipp Laux; that she would hold it in trust until the corporation was organized; that she would then convey it to the corporation; that she would employ an attorney for him to organize the corporation and take care of the filing of the corporation papers and do all the work necessary to get the corporation organized and the charter issued. The corporation was to have the capital value of $75,000, $67,100 worth of stock was to be issued, 335 shares of $100 par value to the plaintiff 335 shares to defendant Kathi Laux, and one share to Philipp Laux. The plaintiff was to hold the stock certificates issued her in trust and when Laux wanted them back or demanded them back the plaintiff agreed to return them to him. In addition the plaintiff was to arrange for the filing fees with the secretary of state, revenue stamps on the stock certificates, and the counsel fee for organizing the corporation. In return the plaintiff was to receive such fractional portion of Laux's estate upon his death as would result if the estate were equally divided among the surviving children of Philipp and Kathi Laux. At the time of Philipp Laux's death there were nine children surviving. Therefore plaintiff would be entitled to an undivided one-ninth share in the estate.

That night, the witness testified, he prepared a deed to all Laux's real estate, conveying it jointly to Francisca O'Sullivan, the plaintiff, and Kathi Laux, and that Laux took the deed back

to Lewistown with him, where it was recorded. A few days later it was returned to the witness O'Sullivan by the clerk and recorder of Fergus county. The articles of incorporation and the necessary by-laws were prepared, the minutes of the first meeting of the incorporators, the first meeting of the stockholders, and the first meeting of the directors were drafted and by-laws adopted. Mr. Philipp Laux, the deceased, was elected president, Kathi Laux vice-president, and the plaintiff secretary-treasurer. The plaintiff acted as secretary-treasurer of the corporation from the time it was organized in 1929 until some time in the latter part of 1936.

The alleged oral agreement of the deceased, Philipp Laux, to execute a will leaving a proportionate share of his property to the plaintiff, was made in the presence of plaintiff and her husband Emmet O'Sullivan. All the direct testimony as to this oral agreement is that of Witness Emmet O'Sullivan. The plaintiff herself was prevented from testifying by virtue of subdivision 3 of section 10535, R. C. M. 1935. The lips of Philipp Laux are sealed in death. It is the contention of the plaintiff that the trial court disregarded the uncontradicted testimony of Emmet O'Sullivan that the deceased at Harlowton in the presence of Emmet O'Sullivan and plaintiff had promised and agreed to execute a will leaving to the plaintiff a proportionate share of his estate in consideration of the services performed by the plaintiff in connection with the organization of this corporation. The plaintiff argues that where there is direct testimony in the record, uncontradicted by other direct testimony, the court is bound thereby and cannot render a decision contrary to such testimony.

Inasmuch as the plaintiff and her husband Emmet O'Sullivan were the only witnesses present at the time the alleged oral agreement was entered into there could be no direct evidence contradicting the witness's statement. However, there is evidence that discredits the testimony of the witness and there are circumstances in the record that directly contradict the testimony of Emmet O'Sullivan and the plaintiff. Defendant Kathi Laux

testified that the corporation was formed because the witness Emmet O'Sullivan persuaded Philipp Laux to form a corporation in order to remove Laux's property from the risk of an attachment because of a personal judgment against him. She testified that when the corporation was formed it was her understanding that the plaintiff Francisca O'Sullivan and she, Kathi Laux, were each to have only one share of stock in the corporation and that the remaining stock was to be owned by the decedent.

Kathi Laux also said that it was the witness Emmet O'Sullivan's idea to have the property transferred to Francisca O'Sullivan and deeded by her to the corporation. There is testimony that Emmet O'Sullivan was paid for all the attorney fees and all the legal work that he performed for the decedent and that the plaintiff was reimbursed for the money that she allegedly advanced in connection with the formation of the corporation. This is in direct conflict to the testimony of Emmet O'Sullivan that he was never paid for his legal services and the testimony of the plaintiff that she was never reimbursed for the filing fees and the revenue stamps that she advanced. Witness Frank Carey testified that in 1936 the decedent first learned that 335 shares of the stock of the corporation were in the name of Francisca O'Sullivan. He said, "This was a revelation to dad and I suggested to him that we immediately remedy the situation." And it was at that time that Laux demanded that plaintiff surrender her certificates of stock.

It is the general rule that a trial court may not disregard uncontroverted credible evidence. Sylvain v. Page, 84 Mont. 424, 276 Pac. 16, 63 A. L. R. 528; Laundreville v. Mero, 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416. But this general rule is subject to many qualifications and extensions. 32 C. J. S., Evidence, sec. 1038, page 1093.

"* * * evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously discredited,

disregarded, or rejected, even though the witness is a party or interested * * *.'' 32 C. J. S., Evidence, sec. 1038, page 1089.

Jeffrey v. Trouse, 100 Mont. 538, 542, 50 Pac. (2d) 872, held that neither the jury, the trial court, nor this court on review of the proceedings had in lower court are bound to accept the unimpeached testimony of a witness that is so incredible and improbable as to repel common sense and reasonable belief.

In Quock Ting v. United States, 140 U. S. 417, 420, 11 S. Ct. 733, 734, 35 L. Ed. 501, the United States Supreme Court said: ''Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced.''

In McLaughlin v. Corcoran, 104 Mont. 590, 602, 69 Pac. (2d) 597, 602, this court said: ''Courts may reject the most positive testimony though the witness be not discredited by direct evidence impeaching him or contradicting his statements. The credibility of courts is not to be deemed commensurate with the facility or vehemence with which a witness swears. It is swearing credibly that is to conclude their judgment.''

And again, citing Roman v. Albert, 81 Mont. 393, 405, 264 Pac. 115, this court held: ''We are not therefore, in reviewing the testimony contained in the record, precluded from sustaining the findings of the trial court by reason of the fact that the record

contains positive and uncontradicted statements contrary to those findings.

"Nor is the trial court bound by such testimony; it is not bound to believe all that it hears: 'The appearance and demeanor of the witnesses, their manner of testifying, and the probability or improbability of the truth of their statements are all to be considered in connection with the other facts and circumstances in the case. When the statements of witnesses, although positive, and not directly contradicted by other witnesses, are improbable, contradictory, and inconsistent in themselves, when they relate to alleged transactions with persons who by death or absence are unable to dispute them, when the witnesses are directly and pecuniarily interested in the result of the controversy, * * * and the attendant circumstances are such as to cast suspicion upon the entire transaction as narrated by them, the court may disbelieve such witnesses and disregard their testimony.' Reid v. Hennessy Mercantile Co., 45 Mont. 383, 123 Pac. 397.'' Walker v. Mink, 117 Mont. 351, 158 Pac. (2d) 630, 636.

In Reid v. Hennessy Mercantile Co., 45 Mont. 383, 389, 123 Pac. 397, 400, the court quotes Moore on Fraudulent Conveyances: "* * * the fact of relationship may cast suspicion on the transaction and lend credence to the claim that it was the result of a conspiracy by or collusion between the parties thereto to defraud creditors, since relations may be presumed to be on terms of intimacy, and to have a natural and strong motive to protect each other at the expense of creditors, and more likely than other persons to lend aid to each other in case of pecuniary difficulty.''

Roman v. Albert, supra, and Reid v. Hennessy Mercantile Co., supra, are also authority for the proposition that the manner in which uncontradicted testimony is given may be considered as may the fact that in the very nature of things, as where testimony relates to statements attributed to a person who has died, it is impossible to secure opposing testimony, and the fact that the witness has shown himself unworthy of credit, may be facts and circumstantial evidence that, in effect, contradict the testimony.

322

20 Am. Jur., "Evidence," sec. 1180, p. 1030: "It is often said that uncontradicted evidence must be taken as true and that as against mere suspicion of falsity, the jury are not at liberty to disregard such evidence. It does not necessarily follow, however, that a verdict or finding must be made in favor of the party introducing uncontradicted testimony, especially if such testimony discloses a variety of circumstances from which different minds may reasonably arrive at different conclusions as to the ultimate facts or if the uncontradicted evidence is that of interested witnesses. There are many cases illustrating the principle that the testimony of a witness, though uncontradicted, is for the triers of facts; whether court or jury, who are not bound thereby."

Again: "Justice does not require a court or jury to accept as absolute verity any statement of a witness not contradicted by direct testimony. Undoubtedly, as a general rule, such testimony should be accepted as controlling, but that rule admits of many exceptions; there are many things which may properly be considered in determining the weight that should be given direct testimony of a witness though no adverse verbal testimony is adduced." 20 Am. Jur., "Evidence," sec. 1180, p. 1031.

On the testimony of interested witnesses, in White v. Chicago, M. & P. S. R. Co., 49 Mont. 419, 143 Pac. 561, the court said that the interest of any witness in the result of the trial or any bias he might entertain as a result of his relation to the parties could be considered and it could be ascertained whether such interest or bias affected his testimony.

The trial court did not believe the testimony of the witness Emmet O'Sullivan. The record discloses that there is evidence that would sustain the trial judge's finding. The interest of the witness in the outcome of the action; that nature of the action itself where it is impossible to secure the opposing testimony because of the death of the person who made the alleged statement; the facts and circumstances that are inconsistent with the testimony of witness O'Sullivan and the superior opportunity of the trial judge to hear and observe the witness while

testifying are all matters that support the decision of the trial judge. It cannot be said that the trial judge acted arbitrarily in disregarding the witness O'Sullivan's testimony even though not directly contradicted. See annotations in 8 A. L. R. 797, and 72 A. L. R. 27.

The plaintiff assigned error for the admission of alleged irrelevant and immaterial matters on cross-examination of witness O'Sullivan. The so-called collateral and irrelevant material related to evidence of payments made to witness O'Sullivan by the decedent for legal services rendered. One was a check dated April 2, 1927, in the amount of $200 payable to O'Sullivan. This check contained a notation on its face that it was made for "atty. fee." Another was a check for $118 made to O'Sullivan by Laux and dated January 25, 1928. Both were introduced for the purpose of refuting O'Sullivan's statement that he had never been reimbursed on advances made to Philipp Laux and that he had performed legal services for Laux for which he had never been paid. It is true that the advancements were made and legal services performed prior to the time the cause of action at issue arose but it was the plaintiff who initially opened up this line of irrelevant testimony. The evidence was remote in point of time but admissible in the discretion of the court, the general rule requiring evidence to be relevant being much more liberally construed in cross-examination of witnesses. Generally counsel should not cross-examine an adverse witness on irrelevant subjects merely to bring out new matter or attempt by such cross-examination to elicit something at which to direct contrary evidence. State v. McConville, 64 Mont. 302, 307, 209 Pac. 987; State v. Stevens, 119 Mont. 169, 172 Pac. (2d) 299. But where irrelevant matter has been brought into the record on direct examination it is not reversible error to permit cross-examination in such matter. In re Lenci's Estate, 106 Cal. App. 171, 288 Pac. 841; Patterson v. Howe, 102 Or. 275, 202 Pac. 225; 5 Jones Commentaries on Evidence, 2d. Ed., sec. 2352, p. 4608.

The other alleged irrelevant evidence was the admission of a check for $500 dated April 14, 1930, payable to Emmet

324

O'Sullivan with the notation thereon "for legal services." This was a check of the corporation countersigned by the plaintiff and made after the services of O'Sullivan in organizing the corporation had been performed. Certainly this was relevant and material to controvert the plaintiff's contention that her husband had never been paid for the legal services he performed for the decedent.

The last document to which the plaintiff objected was a bill ▉ from O'Sullivan to Philipp Laux and the Monarch Realty Company for legal services dated October 1, 1936. This was probably irrelevant, but if irrelevant it alone was not prejudicial. This case was tried by the court without a jury and in such cases it is presumed that irrelevant evidence will not be considered by the trial judge in making his decision. Clem v. Clem, 97 Mont. 570, 36 Pac. (2d) 1034; Healy v. First Nat. Bank, 108 Mont. 180, 89 Pac. (2d) 555.

The admission or exclusion of collateral matter is within the ▉ discretion of the court (sec. 10529, R. C. M. 1935) and where the testimony is in conflict it is not reversible error for the court to admit evidence of collateral facts to determine the credibility of the witnesses. Henderson v. Campbell, 95 Mont. 180, 26 Pac. (2d) 351; State ex rel. Bourquin v. Morris, 67 Mont. 40, 214 Pac. 332; III Wigmore on Evidence, secs. 1003 and 1006, pp. 657, 670.

No reversible error being shown, the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES ANGSTMAN and BOTTOMLY, concur.