No. 12711

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

LAVERNE HOLENSTEIN,

Plaintiff and Appellant,

-vs-

TERRY ANDREWS,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Henningsen, Purcell and Genzberger, Butte, Montana
Rex F. Henningsen argued, Butte, Montana
Robert McCarthy appeared, Butte, Montana

For Respondent:

Berg, Angel, Andriolo & Morgan, Bozeman, Montana
Charles F. Angel argued, Bozeman, Montana

Submitted: November 20, 1974

Decided: JAN 10 1975

Filed: JAN

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In an automobile accident case in which defendant admitted liability, the jury awarded plaintiff no damages. Plaintiff appeals from the judgment and denial of her motion for a new trial.

The accident occurred on the afternoon of June 9, 1968, on North Eleventh Street in Bozeman following graduation ceremonies at Montana State University. Plaintiff Laverne Holenstein was a front seat passenger in her husband's 1967 Cadillac which was being driven by her daughter. While the Cadillac was stopped in a line of traffic waiting for the preceding cars to move forward, it was struck from behind by a following car driven by defendant Terry Andrews.

Plaintiff sued defendant in the district court, Gallatin County, for $41,500 damages consisting of medical expenses, loss of income, and general damages. She contended the accident aggravated a pre-existing arthritic and degenerative disc problem in her neck. In the pretrial order, defendant admitted liability and responsibility for the accident. The case went to trial on the issues of plaintiff's injuries and damages.

At trial, four witnesses testified for plaintiff: plaintiff, her husband, her daughter and one of her physicians, Dr. John Davidson. Defendant was the sole witness in her behalf.

Plaintiff and her daughter testified the impact from the collision was severe. Plaintiff testified the impact threw her forward, she hit either the padded dash or the window, and snapped her back; that this left her stunned, sort of dizzy and half sick. Her daughter generally corroborated her account of the accident.

Following the accident plaintiff went to her daughter's home in Bozeman for thirty to forty-five minutes, and then drove home to Butte. Plaintiff testified that prior to the accident she was a normal, healthy woman who worked in the family business, the Red Rooster Supper Club; that since the accident she is unable to perform

many of the duties of the business and her household duties because of the neck pain. Her husband corroborated her testimony concerning her inability to perform many of these tasks.

Plaintiff first consulted a doctor on July 29, 1968, fifty days after the automobile accident. At this time she consulted Dr. D.E. Staples, her family physician. X-rays of her neck and spine were taken. He ordered ultrasonic treatments, massage, and traction. During August plaintiff took ten of these treatments.

In January 1969 plaintiff consulted Dr. Plett, an ear specialist. The record is barren concerning the nature and purpose of this consultation.

On May 26, 1970, a further X-ray was taken of plaintiff's cervical spine. The radiologist's interpretation indicated the presence of arthritic spurs and that "these have changed very little since the last previous examination" [the X-rays taken on July 29, 1968].

In September 1970 plaintiff fell down the basement stairs at the Red Rooster Supper Club injuring her hand and thumb.

On January 19, 1971, plaintiff consulted Dr. Davidson. He took her history; had X-rays taken and compared them with previous X-rays; and arrived at a diagnosis of "degenerated intervertebral discs and arthritis of the fifth, sixth, seventh neck bones". Plaintiff again consulted Dr. Davidson in February. Another X-ray was taken the day before trial. The X-rays taken on July 29, 1968; May 26, 1970; January 19, 1971: and the day before trial, were examined and compared by Dr. Davidson prior to trial.

Dr. Davidson testified that in his opinion the automobile accident aggravated the condition in plaintiff's neck. He indicated that "the arthritis is progressing and the degeneration of the disc space is also progressing." He admitted that the arthritic and degerative conditions could progress without trauma; and that he could not predict the degree of progression in such case.

Plaintiff also consulted two orthopedic specialists in 1971, Dr. R. J. Johnston of Missoula and Dr. Sherman Coleman of Salt Lake City. She had three acupuncture treatments in Los Angeles. She consulted other doctors thereafter.

Evidence was introduced at trial establishing substantial medical expense incurred by plaintiff.

Defendant was the sole witness in her behalf. Her testimony was confined to the circumstances of the accident.

The jury returned this verdict, dated and signed by the foreman:

> "We, the jury in the above entitled cause, find in favor of the plaintiff, and assess her damages at the sum of $-0-."

Judgment was entered on the verdict. Plaintiff's motion for a new trial was denied. Plaintiff appeals from both.

Plaintiff contends the jury disregarded uncontroverted medical and lay testimony that she suffered an injury to her neck in the accident which aggravated a preexisting arthritic and disc condition. She argues that this renders the verdict one resulting from passion and prejudice entitling her to a new trial.

Defendant contends the jury verdict was equivalent to a determination that plaintiff was not injured in the accident. She argues that such determination was supported by substantial credible evidence and the judgment should be affirmed.

The issue on appeal is the sufficiency of the evidence to support an award of no damages. The crux of this issue is whether the evidence is sufficient to support a finding that plaintiff was not injured in the accident.

In the district court the burden is on the plaintiff to prove by a preponderance of the evidence that she was injured in the accident and that the damages she claims were proximately caused by such injuries. Knowlton v. Sandaker, 150 Mont. 438, 436 P.2d 98.

On appeal it is the function of the Supreme Court to determine

whether there is substantial credible evidence to support the verdict and judgment. Kirby v. Kelly, 161 Mont. 66, 504 P.2d 683 and cases cited therein. In so doing, we review the evidence in the light most favorable to the prevailing party in the district court, here the defendant. Rogers v. Hilger Chevrolet Co., 155 Mont. 1, 465 P.2d 834.

What evidence supports a finding that plaintiff was not injured in the accident? There is no direct evidence that she was uninjured. There is evidence of circumstances inconsistent with injury in the accident. There was no complaint of injury at the accident scene. The accident was not reported to an officer directing traffic nearby. The damage to the two vehicles was minimal. Plaintiff did not consult a doctor until fifty days after the accident. Plaintiff's problems with her neck could be entirely the result of preexisting degenerative arthritic and disc conditions. Her neck problems could progressively deteriorate without trauma.

Arrayed against this evidence is the positive testimony of plaintiff and her daughter that plaintiff was in fact injured in the accident. Plaintiff testified she had no pain in her neck prior to the accident and constant pain thereafter. The arthritic and disc condition in her neck was apparently undiscovered and unknown until her consultation with her family physician fifty days after the accident. Dr. Davidson testified that in his opinion the automobile accident aggravated the condition in plaintiff's neck. None of this testimony was directly contradicted.

The jury was entitled to disregard the expert medical opinion evidence that the accident aggravated the preexisting condition of plaintiff's neck. The jury was so instructed by the district court without objection:

"The rules of evidence ordinarily do not permit the opinion of a witness to be received as evidence. An exception to this rule exists in the case of expert witnesses. A person who by education, study, and experience has become an expert in any art, science, or profession, and who is called as a witness, may give his opinion as to any such matter in which he is versed and which is material to the case.

"You should consider such expert opinion and you should weigh the reasons, if any, given for it. You are not bound, however, by such an opinion. Give it the weight to which you deem it entitled, whether that be great or slight, and you may reject it if in your judgment the reasons for giving it are unsound."

A different rule applies to the non-opinion evidence of plaintiff and her daughter to the effect that plaintiff was injured in the accident. The general rule in such cases is that uncontradicted credible evidence cannot be disregarded by the court or jury. Faith Lutheran Retirement Home v. Veis, 156 Mont. 38, 473 P.2d 503; Smith v. Polish, 150 Mont. 340, 435 P.2d 776; Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044. But this does not mean that where there is direct testimony in the record, uncontradicted by other direct testimony, that the court or jury is bound thereby or cannot render a decision contrary to such direct testimony. O'Sullivan v. Simpson, 123 Mont. 314, 212 P.2d 435. A statement of this principle by the United States Supreme Court is expressed in this language:

"Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by anyone, should control the decision of the court; but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story. His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced." Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L ed 501, quoted with approval in O'Sullivan, supra.

The jury is not bound to believe all that it hears. Walker v. Mink, 117 Mont. 351, 158 P.2d 630. Credibility is not commensurate with the vehemence with which a witness swears, but it is testifying credibly that controls. McLaughlin v. Corcoran, 104 Mont. 590, 69 P.2d 597. Here, the jury was instructed without objection that:

> "In weighing the testimony of a witness, you should take into account his interest or want of interest in the re-sult of the case, his appearance on the witness stand, his manner of testifying, his apparent candor or want of candor, and whether he is supported or contradicted by the facts and circumstances as shown by the evidence."

The jury simply weighed the positive statements of plaintiff and her daughter against the adverse circumstantial evidence and found that plaintiff had not proved she was injured in the accident by a preponderance of the evidence. It rendered a verdict of no damages accordingly. We hold the adverse circumstantial evidence previously set forth sufficient to support the verdict and judgment when considered in the light most favor able to defendant who prevailed in the district court.

The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 7 -

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 12711

LAVERNE HOLENSTEIN,

Plaintiff and Appellant,

vs.

TERRY ANDREWS,

Defendant and Respondent.

FILED

JAN 1 4 1975

Thomas J Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER

PER CURIAM:

IT IS ORDERED that the following additions be made in the above named cause:

On page 5, the last line on the page, just in front of the colon at the end of the sentence add: (and in fact unobjectionable):

On page 7, line 5 from the top of the page, please remove the word "that" at the end of the line and insert: (and in fact unobjectionable):

DATED this 14th day of January, 1975.