No. 85-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

PATRICK DAWSON,

Plaintiff and Appellant

v.

THE BILLINGS GAZETTE, A Division of
LEE ENTERPRISES, a Foreigh Corporation;
DR. GENE V. HOLDEN, M.D.; and the BILLINGS
CLINIC, a Partnership,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Patten Law Firm, P.C.; James A. Patten and
Russell D. Yerger, Billings, Montana

For Respondent:

Moulton, Bellingham, Longo and Mather, P.C.;
William A. Forsythe, Billings, Montana
Anderson, Edwards and Molloy; Donald W. Molloy,
Billings, Montana

---

Submitted: June 12, 1986

Decided: October 10, 1986

Filed: OCT 13 1986

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Patrick Dawson appeals a jury verdict in Yellowstone County District Court which found in his favor on the issues of liability and proximate cause in his wrongful termination suit but awarded him zero damages. The District Court denied Dawson's motion for a new trial.

The issues on appeal are whether the jury verdict is supported by sufficient evidence in the record and whether the District Court abused its discretion in denying Dawson's motion for a new trial.

We affirm.

Appellant Dawson filed suit against the Billings Gazette on September 23, 1982, alleging that he had been wrongfully terminated from his employment as a reporter with the newspaper on June 21, 1982, and that the Gazette had violated its duty of good faith and fair dealing. Dawson also filed suit against Dr. Holden and the Billings Clinic for disclosing confidential medical information to the Gazette without his authorization. The claim against Dr. Holden and the Billings Clinic has been dismissed.

A jury trial was held in March, 1985, and the jury found that:

1) The Gazette had breached its duty of good faith and fair dealing to Dawson;

2) the Gazette was the proximate cause of Dawson's damages;

3) Dawson was entitled to zero damages;

4) the Gazette was not liable for punitive damages.

Dawson motioned for a new trial on the issue of damages or, in the alternative, a new trial on all issues. The motion was denied on May 9, 1985.

2

As to the first issue, in Barmeyer v. Montana Power Co. (1983), 202 Mont. 185, 191, 657 P.2d 594, 597, we stated the standard by which a jury verdict is to be reviewed;

> Motions to set aside jury verdicts as not supported by the evidence are proper only when there is a complete absence of any credible evidence in support of the verdict. All evidence and all inferences drawn therefrom must be considered in a light most favorable to the adverse party. The courts will exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision. Jacques v. Montana National Guard (1982), 199 Mont. 493, 649 P.2d 1319, 1325-1326, 39 St.Rep. 1565, 1573-1574.

In Holenstein v. Andrews (1975), 166 Mont. 60, 530 P.2d 476, we held that where there is substantial credible evidence in the record to support a verdict of zero damages, the verdict will be upheld.

We find substantial credible evidence in the record to support the jury's verdict.

First, Dawson had three sources of income from the time he was fired until the time of trial. He received four and one-half weeks pay for unused vacation and holiday time and two weeks severance pay from the Gazette. He received unemployment compensation and performed free-lance work for several publications, including U.S.A. Today, Time Magazine, The Denver Post, The Miami Herald, The Dallas Morning News, and The Great Falls Tribune.

Second, we find that Dawson has failed to mitigate his damages. An injured party is not required to seek employment in another line of work or to move to a different locality. Selland v. Fargo Public School Dist. No. 1 (N.D. 1981), 302 N.W.2d 391, 393. However, he or she must exercise ordinary diligence to procure other employment. Vallejo v. Jamestown College (N.D. 1976), 244 N.W.2d 753, 759.

3

After he was fired Dawson applied to just four newspapers, restricted his job search to papers of equal or greater circulation than that of the Gazette, and only those located in the western United States. He totally rejected the idea of working for a smaller newspaper in fear of the resulting harm to his career. The Sacramento Bee indicated that a position might be available but Dawson rejected the inquiry because of the salary cut he would be taking.

The Gazette presented several witnesses who testified that in their positions as newspaper editors, they would be willing to hire reporters who had moved to smaller papers and even those who had been fired from other papers. Several of the witnesses themselves had taken positions with smaller papers in hopes of advancing their careers. Evidence was also presented that another reporter fired by the Gazette found comparable employment with the Bozeman Chronicle within one month of her dismissal.

It is very likely that Dawson could have obtained full-time employment with a reputable newspaper a short time after his firing if he had vigorously sought to do so. By failing to pursue comparable full-time work in the journalism field, Dawson failed to mitigate his damages.

The plaintiff has the burden of proving his own damages Holenstein, 530 P.2d at 478. In addition, the jury is not compelled to believe the plaintiff's testimony. Maykuth v. Eaton (Mont. 1984), 687 P.2d 726, 41 St.Rep. 1800.

Dawson argues that because he was never offered a job, he has proven his damages. We reject the argument and hold that there is substantial evidence from which the jury could have concluded that Dawson suffered no damages. The jury decides what evidence to accept and what evidence to reject.

4

We refuse to overturn the jury verdict.

As to whether the District Court abused its discretion in denying Dawson's motion for a new trial, we refer to Lindquist v. Moran (Mont. 1983), 662 P.2d 281, 284-285, 40 St.Rep. 439, 442-443.

> In considering a motion for new trial, the trial court is not to weigh the evidence where conflicting evidence is presented. Yerkich v. Opsta (1978), 176 Mont. 272, 274, 577 P.2d 857, 859. Rather, the trial court's discretion to grant a new trial for insufficiency of the evidence is exhausted when it finds substantial evidence to support the verdict. Stenberg v. Neel, (1980), Mont., 613 P.2d 1007, 1011, 37 St.Rep. 1170, 1175; Kincheloe v. Rygg (1968), 152 Mont. 187, 191, 448 P.2d 140, 142. Where conflicting evidence is present, it is an abuse of the trial court's discretion to grant a new trial. Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 128, 580 P.2d 915, 919, overruled on other grounds, Bohrer v. Clark 180 Mont. 233, 590 P.2d 117. We will not substitute our view of the evidence for that of the jury where that evidence furnishes reasonable grounds for different conclusions. Rock Springs Corp. v. Pierre (1980), Mont., 615 P.2d 206, 211, 37 St.Rep. 1378, 1384.

In addition, the evidence must be reviewed in a light most favorable to the prevailing party. Holenstein, 530 P.2d at 478.

There is conflicting evidence as to whether or not Dawson has been damaged. Dawson testified that due to his inability to find comparable employment subsequent to his dismissal from the Gazette he had been damaged in the amount of lost wages. The Gazette presented testimony that Dawson failed to mitigate his damages and actually made a conscious decision to pursue a free-lancing career in journalism rather than to seek full-time employment with another publication.

The following is an excerpt of the cross-examination of Dawson at trial. Counsel for the Gazette is referring to Dawson's December 7, 1982 deposition.

5

Q. Let me refer you to page 44, line 25. That is the very bottom of the page.

And I asked you: "Isn't it true that to an extent, you have turned away from, I guess, the chance of getting an entry-level position as a beginning reporter at a small to medium sized newspaper so that you could pursue the course you've set for yourself?"

And you answered: "I think I am justified in making that a low priority."

A. Yes.

Q. I asked: "But, in fact, you have made it a low priority, haven't you?"

And you answered affirmatively, didn't you?

A. Right.

Q. The free-lancing work and staying in Billings as opposed to going to work for a small weekly or, I guess, a small and not very significant daily, is a choice you have made with your life, isn't it?

A. I would say so.

The jury decided that the Gazette had breached its duty of good faith and fair dealing to Dawson but concluded that Dawson was not entitled to any damages. The District Court must respect the jury's decision when conflicting evidence is present, as is the case here. To grant a new trial in light of conflicting evidence would be an abuse of discretion.

Reviewing the evidence in a light most favorable to the Gazette, we agree with the District Court that substantial evidence exists to support the jury's verdict of zero damages. The Gazette's witnesses established that there is a job market for a person with Dawson's skills. He certainly had the ability to work as a salaried reporter for another news organization but decided to work on his own. The jury could reasonably conclude that Dawson had not done enough to mitigate his damages.

The District Court did not abuse its discretion in denying Dawson's motion for a new trial.

Affirmed.

_____
Justice

We concur

_____
Chief Justice

_____

_____
Justice

Justice John C. Sheehy, dissenting:

I dissent to permitting evidence of jobs outside of his living area for mitigation of damages.

_____
Justice

7

Mr. Justice Frank B. Morrison, Jr. specially concurs in the majority opinion as follows:

In the recent case of Safeco Insurance Co. v. Ellinghouse (1986), ___ P.2d ___, 43 St.Rep. 1689, this Court blatantly substituted its judgment for that of the jury. In addition to an award for punitive damages, the jury in Ellinghouse had awarded $200,000 for mental distress damages. In setting that award aside the majority said:

> The trial court awarded damages of $200,000 to Ellinghouse for emotional distress, in opposition to which Safeco advanced the argument of an absence of malice on its part. Although an award of mental anguish is justified by the evidence presented by Ellinghouse on the issue of malice, the amount of the award substantially exceeds that which the evidence could sustain and therefore must be reduced.

Without any question there was substantial evidence to support the jury's award of $200,000 in compensatory damages to Ellinghouse. This Court simply disagreed with the jury award and substituted its judgment for that of the jury.

Let us see how the Court's approach in Safeco can be squared with the Court's rationale employed to uphold a zero verdict. The majority in this case states:

> Dawson argues that because he was never afforded a job, he has proven his damages. We reject the argument and hold there is substantial evidence from which the jury could have concluded that Dawson suffered no damages. The jury decides what evidence to accept and what evidence to reject. (Emphasis supplied.)
>
> . . .
>
> The jury decided that the Gazette had breached its duty of good faith and fair dealing to Dawson but concluded that Dawson was not entitled to any damages. The district court must respect the jury's decision when conflicting evidence is present, as is the case here. To grant a new trial in light of conflicting evidence would be an abuse of discretion. (Emphasis supplied.)

8

My learned brother, the Chief Justice, has signed this opinion upholding an award of zero damages on the basis that courts cannot interfere with the discretion of a jury. In the Ellinghouse case, the Chief Justice cast a decisive vote in favor of disregarding the discretion of the jury.

The Chief Justice is not the only villain in this melodrama of inconsistency. Time and again the members of this Court disregard appellate rules of review and substitute their judgment for that of the District Judge or the jury; except, of course, where the members of the Court agree with the District Court or jury and then they employ the rule, applicable in all cases, that we must respect the judgment of the trier of fact.

I am concurring in the decision to affirm the discretion of the jury in this case, although I personally disagree with the verdict. The law compels us to respect the discretion of the trier of fact in all cases whether the verdict be large or be nothing at all.

_____
Justice