**FAIR v. UNITED STATES.**

No. 2986.

District Court, W. D. Pennsylvania.

Feb. 7, 1945.

John A. McCann and Artemus C. Leslie, both of Pittsburgh, Pa., for plaintiff.

James P. Garland, Sp. Asst. to the Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This is an action for the recovery of federal estate taxes and interest paid thereon, alleged to have been erroneously assessed and collected from the plaintiff. The court, after hearing, makes the following findings of fact and conclusions of law:

### Findings of Fact.

1. This is an action for the recovery of federal estate taxes with interest thereon. The plaintiff is a citizen of the United States, a resident of Allegheny County, Pennsylvania, and was duly appointed, qualified and is acting as the executrix of the estate of Minna D. Lorch, deceased.

2. Minna D. Lorch died testate, July 19, 1938, while a resident of Allegheny County, Pennsylvania. She was survived by her only child, Margaret Lorch Fair, the executrix of her estate, her daughter's husband, Robert J. A. Fair, and her daughter's two sons, Robert J. A. Fair, Jr., and Frederick Maul Fair, with whom the decedent resided.

3. September 6, 1939, plaintiff filed a federal estate tax return for the above estate with Walter L. Miller, Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, at Pittsburgh, Pennsylvania; that said return disclosed a net estate of $146,370.64 and a total tax due of $10,536.78, which she paid to the Collector of Internal Revenue.

4. That upon the audit of said federal estate tax return, the Commissioner of Internal Revenue assessed a deficiency in estate tax against the plaintiff in the amount of $23,188.21. After notice and demand from the Collector, plaintiff paid, March 3, 1942, the said deficiency and interest thereon in the amount of $3,280.65.

5. May 15, 1942, and on November 20, 1942, plaintiff duly filed claims for refund of the above amounts with interest thereon, according to law. June 9, 1942, the Commissioner of Internal Revenue dis-

allowed the claim filed May 15, 1942. More than six months have elapsed since the filing of the claim for refund November 20, 1942. The Commissioner has never allowed or disallowed the claim and has taken no action thereon.

6. The plaintiff is the sole owner of said claim. No action thereon has been taken in Congress or by any of the departments. Plaintiff has, at all times, borne true allegiance to the Government of the United States and has not in any way aided, abetted or given encouragement to any rebellion against said Government. No part of the above payment has been abated, refunded or credited to the plaintiff or to the said estate.

7. The Commissioner of Internal Revenue increased the value of decedent's estate from the returned amount of $193,079.12 to the amount of $357,541.37, by adding to it the aggregate amount of gifts made to Margaret Lorch Fair, daughter, Robert J. A. Fair, son-in-law, Frederick Maul Fair and Robert J. A. Fair, Jr., grandchildren, which gifts the Commissioner valued at $164,462.25.

8. Decedent did make gifts to the above-named persons December 24, 1935 (which was about two years and seven months before her death). The aggregate amount of said gifts was $151,662.25. The gifts of stock valued at $146,167.25 made to Margaret Lorch Fair was subject to the assumption of the obligation in the amount of $12,800 which the decedent owed to the Union Trust Company of Pittsburgh and which Margaret Lorch Fair assumed and paid, which reduced the value of the gift of stock to her to the amount of $133,367.25.

9. Of the total gifts made by the decedent, approximately $5,000 was given to the son-in-law, Robert J. A. Fair, and $5,000 was given to each of the two grandchildren.

10. Decedent in her last will dated January 12, 1938, bequeathed certain property to her two grandchildren and the residue of her estate to her daughter, Margaret Lorch Fair.

11. The decedent was sixty-seven years, ten months and eighteen days old at the time of her death. She was sixty-five years of age when the gifts were made December 24, 1935.

12. The immediate cause of decedent's death, as disclosed on the doctor's certifi-

cate, was cardiac exhaustion and pulmonary oedema.

13. Decedent had cancer of the cervix uteri from the year 1931 to the date of her death. She had asthma during the same period and for a longer period of time. She also had other illnesses of a minor character from 1931 to 1935 and until the time of her death. She had been in the hospital for examinations and sometimes for treatments several times between 1931 and the date of her death. During the year 1935 she was in better physical condition than she had been for some time prior thereto. She was an intelligent woman and strong-minded. She was active socially and looked after her own business. She went to Atlantic City a number of times and went to Florida in the early part of 1936, shortly after making the gifts at Christmas in 1935.

14. The decedent had no knowledge that she had cancer until the Spring of 1938. When the doctor told her then, for the first time, it was a great shock to her and was the first knowledge that she had of any condition which was serious to her health. After being told concerning the cancer she wrote in her bible, "Yesterday, April 3, 1938, I met my Gethsemene; nothing harder can come, but God will see me through."

15. The decedent's motive in making the gifts was to give her daughter, grandchildren and son-in-law the gifts so that they could enjoy the property given during the lifetime of the decedent. A minor motive for making the gifts at that time was to avoid increased gift taxes in 1936, and also a minor motive for making the gifts at the time made was because it was Christmastime. She did not make the gifts in contemplation of death nor were they testamentary in character.

16. The gifts made were of securities inherited by the decedent from her mother.

17. Walter L. Miller, Collector of Internal Revenue at Pittsburgh, died September 14, 1942.

18. The persons to whom the gifts were made by the decedent were not in financial need, as the son-in-law had a sufficient income to support himself and his family. The total amount of the gifts made aggregated about one-half of decedent's estate at the time the gifts were made.

19. Among decedent's obligations outstanding at the time the gifts were made was a mortgage of $18,800 in favor of the Peoples-Pittsburgh Trust Company and a mortgage of $13,500 in favor of the Birmingham Fire Insurance Company. Decedent's income tax return for 1935 showed interest paid of $3,965.59 and for the year 1936, $3,065.14. Her net income for 1935 was $2,694.81 and for 1936 was $1,992.14. After making the gifts aforesaid, decedent had a sufficient estate to support her.

20. Decedent consulted with her attorney in regard to the gifts. She did not state that she was making the same in contemplation of death. She was advised by her attorney the rate of the gift taxes when the gifts were made; that an increase would be made in 1936. He also advised her the amount the estate tax would be and that gift taxes could be deducted from the estate taxes if paid.

### Conclusions of Law.

I. The burden is on the plaintiff to show by the preponderance of the evidence that the gifts made were not made in contemplation of death.

II. The gifts made by the decedent were not made in contemplation of death, and therefore, are not properly includible in the gross estate of Minna D. Lorch, deceased, for federal estate tax purposes.

III. The alleged deficiency in federal estate tax in the amount of $23,188.21 and interest in the amount of $3,280.65, with interest thereon, was illegally collected.

IV. Plaintiff is entitled to judgment against the defendant in the amount of $26,468.86, with interest thereon from March 3, 1942.

### Opinion.

This is an action for the recovery of federal estate taxes in the amount of $23,188.21 and interest paid thereon in the amount of $3,280.65, with interest on both amounts which plaintiff alleges were erroneously assessed and collected from her, representing the estate of Minna D. Lorch, deceased.

The question involved is, Were the gifts by the deceased to her daughter, her two grandchildren and her son-in-law made in contemplation of death within the meaning of Section 302(c) of the Revenue Act of 1926, now Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 811(c). The facts fully ap-

pear in the foregoing findings of fact; a brief statement therefrom is as follows:

Decedent made the gifts at Christmastime, 1935. She died July 19, 1938. The value of the gifts was $151,662.25, which was approximately fifty per cent. of her estate. After the making of the gifts, decedent had a sufficient estate to support her. She resided with her daughter, her two grandchildren and son-in-law. The securities given were received by the decedent from her mother's estate. She was sixty-five years of age when she made the gifts; she was an intelligent, strong-minded woman. She made visits to Atlantic City, periodically, and also, to Florida. She visited Florida in the early part of 1936. Before the making of the gifts, she had asthma; she, also, in 1931 had a cancer of the cervix uteri. This continued until the time of her death. She had been in the hospital several times between 1931 and 1935, also, thereafter. She received doctors' attention. The year 1935 was her best year, physically, since the year 1931. She did not know that she had a cancer until the Spring of 1938, when the doctor, for physical reasons, advised her for the first time thereof. She wrote in her bible at that time, the following: "Yesterday, April 3, 1938, I met my Gethsemene; nothing harder can come, but God will see me through." The information received from the doctor was a great shock to her. There is no evidence that she had any fear of death or contemplated death prior to that time. She consulted her attorney about the making of the gifts and was advised by him that the gift tax would be larger in 1936 than it was at Christmas of 1935. She was also advised about the estate tax and the right to deduct gift taxes paid therefrom. She did not make any statement to her attorney about death. At the time of the making of the gifts she told her daughter and son-in-law that she wanted them to have the gifts so that they might enjoy the use of the same during her lifetime.

Section 811 of the Internal Revenue Code, as amended, reads, in part, as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * *

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter."

The leading case on this subject is United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, in which the question under consideration is discussed at length. The court, in an opinion by Chief Justice Hughes, 283 U.S. at pages 115 to 119, 51 S.Ct. at page 450, 75 L.Ed 867, stated:

"The phrase 'in contemplation of death,' previously found in state statutes, was first used by the Congress in the Revenue Act of 1916, imposing an estate tax. It was coupled with a clause creating a statutory presumption in case of gifts within two years before death. The provision was continued in the Revenue Act of 1918, which governs the present case, and in later legislation. While the interpretation of the phrase has not been uniform, there has been agreement upon certain fundamental considerations. It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. The provision is not confined to gifts causa mortis, which are made in anticipation of impending death, are revocable, and are defeated if the donor survives the apprehended peril. Basket v. Hassell, 107 U.S. 602, 609, 610, 2 S.Ct. 415, 27 L.Ed. 500. The statutory description embraces gifts inter vivos, despite the fact that they are fully executed, are irrevocable and indefeasible. The quality which brings the transfer within the statute is indicated by the context and manifest purpose. Transfers in contemplation of death are included within the same category, for the purpose of taxation, with transfers intended to take effect at or after the death of the transferor. The dominant purpose is to reach substitutes for testamentary dispositions and

thus to prevent the evasion of the estate tax. Nichols v. Coolidge, 274 U.S. 531, 542, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Milliken v. United States [ante], 283 U.S. [at page] 15, 51 S.Ct. 324, 75 L.Ed. 809. As the transfer may otherwise have all the indicia of a valid gift intervivos, the differentiating factor must be found in the transferor's motive. Death must be 'contemplated,' that is, the motive which induces the transfer must be of the sort which leads to testamentary disposition. As a condition of body or mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership, is most likely to prompt such a disposition to those who are deemed to be the proper objects of his bounty, the evidence of the existence or nonexistence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death. The natural and reasonable inference which may be drawn from the fact that but a short period intervenes between the transfer and death is recognized by the statutory provision creating a presumption in the case of gifts within two years prior to death. But this presumption, by the statute before us, is expressly stated to be a rebuttable one, and the mere fact that death ensues even shortly after the gift does not determine absolutely that it is in contemplation of death. The question, necessarily, is as to the state of mind of the donor.

"As the test, despite varying circumstances, is always to be found in motive, it cannot be said that the determinative motive is lacking merely because of the absence of a consciousness that death is imminent. It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words 'in contemplation of death' mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'

"If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. Such transfers were made the subject of a distinct gift tax, since repealed. As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in anticipation of death, the Government mentions transfers made 'for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision.' The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor's bounty, independently established with competencies of their own, without being compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death.

"It is apparent that there can be no precise delimitation of the transactions embraced within the conception of transfers in 'contemplation of death,' as there can be none in relation to fraud, undue influence, due process of law, or other familiar legal concepts which are applicable to many varying circumstances. There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

See also, Rea v. Heiner, D.C., 6 F.2d 389; Eckhart, Ex'r, 33 B.T.A. 426; Levi v. United States, 14 F.Supp. 513, 83 Ct.Cl. 284.

I have reached the conclusion that the gifts in this case were not made in con-

templation of death, and therefore, are not within the aforesaid statute; that the gifts were made by the decedent, the principal purpose being that her daughter, grandchildren and son-in-law might have the use and enjoyment of the estate during her lifetime. Minor motives, also, were the saving in gift tax and the desire to make the gifts at Christmastime.

Let an order for judgment be prepared in accordance with the foregoing findings of fact, conclusions of law and this opinion.