FIRST NAT. BANK OF KANSAS CITY v. NEE, Collector of Internal Revenue.

No. 3231.

District Court, W. D. Missouri, W. D.
Aug. 5, 1946.

816

Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., for plaintiff.

James P. Garland, Sp. U. S. Atty. Gen. (Leon F. Cooper, Sp. Asst. to Atty. Gen., on depositions), and Sam M. Wear, U. S. Atty., and Richard H. Musser, Asst. U. S. Atty., both of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action by plaintiff to recover $129,029.80 with interest. This sum is part of a collection made on an alleged over-assessment of an estate tax. Such claimed over-assessment was made by adding the value of a trust to the gross estate of plaintiff's decedent. Such addition was made under Section 811, Title 26 U.S.C.A. Int.Rev.Code. Said section undertakes to avoid transfers of property in trust if made in contemplation of death. It is so contended by the defendant.

Two questions are presented: (a) Did the decedent irrevocably renounce all right and interest in the trust estate? And (b) was such trust created in contemplation of death?

On July 12, 1923, the decedent executed an original trust indenture. The purpose of the trust was to set aside and sequester certain securities for a period of ten years: The accumulations or increment on such securities were to be held by the designated trustees for a period of ten years and then distributed to the trustor or settlor. In the event of his decease certain beneficiaries were designated to participate in the trust estate. At later dates, towit, on July 16, 1923, and on October 15, 1928, modifications were made of the trust indenture.

Both when the original trust was created and when modifications were made as of the dates mentioned, the trustor or settlor retained absolute power of revocation. On February 14, 1933, the said decedent or trustor again modified the trust agreement and, in so doing, incorporated the following specific renunciation of his interest or power:

"Seventh: The said John H. Wiles has never received any income, profits or benefits from the Trust Estate since creating the same, under date of July 12, 1923, nor has he ever withdrawn any of the principal or corpus therefrom, and the said John H. Wiles does hereby forever release any right or power to revoke said trust agreement, or any part thereof, or in any way from the date of the execution of this supplement to make himself a beneficiary or to reclaim any part of said trust estate; the intent, purpose and object of this instrument being to pass absolute and irrevocable title, right and possession to and dominion over the property composing the trust estate herein and of the income derived therefrom, from the said John H. Wiles to the said The First National Bank of Kansas City and John H. Wiles as Trustee, as and of the date of the original trust instrument, to-wit, July 12, 1923."

The trust agreement further provided that the trust estate or the income therefrom would not become subject to distribution until the death of the settlor, the said John H. Wiles. Beneficiaries were named and the proportion of the income to be distributed to them from time to time, and the settlor even anticipated the failure of named beneficiaries and in such event designated his heirs and directed that distributions to them be made as outlined and prescribed by the statutes of Missouri.

At the time the trust estate was created and modifications made the said John H. Wiles was in comparatively good health. Examinations made by capable physicians did not disclose physical ailments that

might cause alarm. The original trust, as disclosed by his attorney, was made with the sole purpose of withdrawing certain of his securities from his active business and to sequester them for his use in the event of need. A few years thereafter settlor was advised by his counsel that, in the event of his death, the trust estate, under the law, would be added to his gross estate for federal taxation. At that time legislative changes were being made in the revenue laws and, moreover, there was a degree of uncertainty in judicial construction. Since the settlor, as one of the trustees, knew that an income tax was being paid on the trust estate, he did not readily accept the view that his own personal income might be, under the law, augmented because of the trust estate. Early in the year 1933 he became convinced by decisions to which his attorney called his attention that the then status of the trust estate would inevitably impose upon him an additional income tax. It was then, to-wit, February 14, 1933, that he amended or modified the trust agreement so as to put the trust estate beyond recall. This was more than eight years before his decease. He was born on April 28, 1861, and therefore was nearly 72 years old. The evidence was undisputed and without countervailing proof that the sole and only purpose in creating an irrevocable trust was to avoid the imposition upon him of an additional income tax. It is true that the amount was not disclosed but it is a familiar rule that when the income from the trust estate was added to the rather large income from his own personal fortune his income would be pushed into what is known as the higher brackets and thus a considerable increase would be made over the aggregate amount of the two separate returns. Until that time he had made his income tax return upon the belief that he could not in law be burdened with a tax on the income of the trust estate. Subsequently to the modification of the trust indenture he made additions to the trust estate. At the time of his death, on June 22, 1941, his personal estate aggregated approximately $1,500,000 whereas the trust estate aggregated approximately $500,000. The evidence further showed that until the

very day of his death the settlor was active in business and at no time did he intimate or suggest a fear or even the expectation of his early demise. According to the undisputed testimony he never at any time, either with his attorney or with his friends, contemplated or mentioned even the possibility of death.

Other facts, if they become pertinent, will be stated in the course of this memorandum opinion.

■ 1. It would be difficult to conceive of a more perfect and complete renunciation of interest in and right of dominion over the trust estate than that contained in the modification of the trust indenture of date February 14, 1933.

The trust was not operative in favor of beneficiaries until his death. He renounced personal interest and disavowed power or dominion. He had even provided against failure of named beneficiaries by designating his heirs who were to take, under the laws of descents and distributions, in Missouri. While the living may have no heirs, yet, when the trust estate became operative as to beneficiaries, he did have heirs.

This case differs from the case of Beach v. Busey, D.C., 64 F.Supp. 220, and affirmed by the Court of Appeals, Sixth Circuit, July 15, 1946. In the latter case, the trust indenture was susceptible of the construction that, upon failure of the named beneficiaries, the trust estate would revert to the trustor or settlor. It is far different in this case.

It would be a strained and an unreal interpretation of the trust indenture in this case to defeat the clear and obvious efforts of the decedent to separate the trust estate from his personal estate. He did what he had a right to do and his purposes should not be thwarted.

■ 2. Upon all the evidence it was made clear that the decedent even up to the last day of his life entertained no thought of death unless it was "the general expectation of death that all entertain." See Allen v. Trust Company, 326 U.S. 630, loc. cit. 633, 66 S.Ct. 389, 390.

As said in United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 451, 75 L.Ed. 867,

contemplation of death under the statute "must be a particular concern, giving rise to a definite motive." The evidence was all one way and conclusive that the dominant and impelling motive of the decedent was to avoid an increased burden of personal income tax. His attorney so testified as well as his secretary.

Many witnesses who were business associates and others who were social acquaintances were in perfect agreement that throughout his long and active life the decedent was not only in love with life but till the very last looked forward hopefully to days to come. He was interested in business and sports and gave himself unreservedly to both. Neither by word or act did decedent ever betray to any one that he contemplated death. On the contrary, his words and deeds indicated that he did not contemplate death and this was true when he created and modified and maintained his trust.

In Allen v. Trust Company, supra, a trust was sustained where, within two years of death, the settlor modified the trusts "so that the trusts would not be a part of his estate for estate tax purposes." If lawful and proper to do this, it would be equally lawful and proper to avoid the burden of increased income tax.

In view of the above, judgment should be entered as prayed and it will be so ordered.