MARION B. PORTER, Paintiff and Appellant, *v.* WILLIAM
V. MOORE, Defendant and Respondent.
No. 9533.
Submitted April 11, 1956. Decided May 10, 1956.
300 Pac. (2d) 513.

Messrs. Sandall & Moses, Mr. Cale Crowley, Billings, for
appellant.

Messrs. Longan & Jones, Billings, for respondent.

Mr. Robert L. Jones and Mr. Charles F. Moses argued orally.

THE HON. LE ROY L. McKINNON, District Judge (sitting in place of Mr. Justice Davis, disqualified).

This is an action in equity wherein the plaintiff sought an accounting, dissolution of an alleged partnership with the defendant, and the appointment of a receiver for the partnership. After hearing, the trial court made findings of fact and conclusions of law in favor of defendant and rendered a decree dismissing plaintiff's complaint. From the decree the plaintiff appeals.

The complaint alleges: That plaintiff Porter and defendant Moore entered into a partnership agreement for the purpose of acquiring, selling and otherwise dealing in oil and gas leases on mineral lands owned by the United States of America and others; that the parties would invest sufficient funds in the venture to secure and acquire federal leases and would spend their time and efforts to contact persons in and about the City of Billings, Montana, and elsewhere, and to study and survey the records on file in the Bureau of Land Management at Billings, Montana, and elsewhere, to locate leaseable land for the purpose of the partnership business venture; that it was mutually agreed that plaintiff and defendant would invest equally of their own funds in the purchase and acquisition of oil and gas leases taken either in the name of the plaintiff or of the defendant for the use and benefit of the partnership; that the gain and profit and royalties from the resale of said leases would be divided equally between them; that the above agreement was in fact carried out; that in addition to that agreement it was agreed that each of the parties would contact persons interested in making investments in such leases, and use the money of such persons to secure other leases; that the profits gained by the sale and assignment of said leases and the royalties withheld would be divided by agreement between the investors and the partners, with the partners agreeing to divide their share equally and that this latter additional agreement was in fact carried out. The complaint further alleges

misconduct upon the part of defendant, secret transactions by defendant, and refusal of defendant to account.

The answer admits the entering into a partnership agreement for the purposes of acquiring, selling, and otherwise dealing in oil and gas leases. The answer alleges that by the terms of the agreement the defendant would search the records of the Federal Land Office for land upon which persons could file for the purchase of oil and gas leases from the United States; that the plaintiff was to raise or procure others to raise money for the purpose of filing for the purchase of oil and gas leases; that oil and gas leases were to be resold; that the profits, if any, from the resale of oil and gas leases were to be divided one-quarter to plaintiff, one-quarter to defendant, and one-half to the person or persons furnishing the money for the purchase of said leases. The answer further alleges that the defendant found certain lands open for lease, that the plaintiff furnished or procured money, and certain leases were purchased from the United States; that the defendant found other suitable lands open for leasing and the plaintiff failed to procure money for the purchase of oil and gas leases on the said land. The answer denies any misconduct on the part of the defendant and alleges complete and good faith performance of the agreement by the defendant.

The testimony on behalf of the two contending parties is in accord generally on the following facts: That the defendant Moore was connected with the office of the plaintiff Porter from sometime in the spring of 1951; that he was not on salary but did receive some pay for work done; that in February 1951, defendant Moore originated the ''Moore Claims Service,'' the work of which consisted of adjusting claims; that at the time the agreement here in litigation was entered into it was the understanding of both parties that the defendant Moore was to obtain employment in checking federal land available for leasing in the Land Office in Billings, Montana; that information obtained through this employment as to what lands were open for oil and gas leases, and also as to where men and companies

in the oil business were making leases, was to be made available to both the plaintiff and the defendant in an effort to promote leases on tracts still open in such areas; that any profits made on the sale of such leases was to be divided equally between the plaintiff and the defendant and that the agreement terminated with the filing of the instant action on April 5, 1952.

There is much conflicting testimony as to the actual terms of the agreement, e. g., the following excerpts from the testimony of the plaintiff, Marion B. Porter, on direct examination:

"A. Well, Mr. Moore was employed by various people and oil companies, among them Hancock Oil, Union Oil, and various lease brokers and other oil men who were forming company blocks for major companies; therefore he knew where they were picking up the land.

"Q. As I understand it then, you—the idea of the partnership was just to tag along behind the play of the major oil companies and get land areas in their blocks? A. Tag along with the major companies, and people who knew the business.

"Q. And that was the information that you relied upon to secure investors in your enterprise? A. Yes, that was practically all the information we had. * * *

"Q. What were the terms of the partnership agreement, Mr. Porter, in regard to the investment of money by either you or the defendant, Mr. Moore? A. That we both invest all we could, and obtain other investors.

"Q. In other words you would invest your own money in this venture? A. Yes, Sir.

"Q. And it was agreed that Mr. Moore would invest his own money in this venture? A. If he had any, yes. * * *

"Q. Mr. Porter, in the information of your partnership on June 15, 1951, and the terms thereof, what were the terms concerning the contributions to be made by you and by the defendant, if any, to this enterprise, in money?

"Mr. Longan. Object to it as already answered and repetitious.

"Court. He may answer.

"A. Do you want me to go through the whole arrangement?

"Q. Yes. A. Briefly stated. * * *

"Mr. Longan: (Interrupting) Now, Your Honor, may I interrupt, it is repetitious if he is going through the whole arrangement and reiterates * * *.

"Court: He is going over part of it here, but as I understand, he hasn't put in all the terms of the contract.

"Mr. Moses: Right.

"Mr. Longan: And may I ask if the question is directed to an additional term of the contract?

"Mr. Moses: Right.

"Mr. Longan: It will be limited to that?

"Mr. Moses: Right.

"Court: All right. A. Mr. Moore was to obtain employment as a checker.

"Mr. Longan: Move to have the answer stricken as not responsive to the question.

"Mr. Moses: Would you read the question over for me, Mr. Rogers, to see if I have stated it correctly. (Whereupon the last question asked was repeated by the court reporter.)

"Mr. Longan: Withdraw objections other than it is leading in form, concerning the term of the partnership and suggests an answer.

"Court: He may answer.

"A. We were each supposed to contribute as much as we could, I didn't have too much money; Moore had none. * * *

"Mr. Longan: Object to that last part as not responsive and move it stricken, the fact that I did not have too much money and Moore had none.

"Court: Just a minute, it will be stricken, the last part of it."

Further testimony to the effect that Mr. Moore was to contribute from profits made by the partnership was offered and refused following which offers of proof were made and disallowed.

264

The plaintiff Marion Porter further testified:

"Q. And you have testified, I believe, that the profits that accrued from the conduct of this partnership venture, was divided equally between you * * * is that right? A. They were insofar as I know, yes.

"Q. Were there any discussions with Mr. Moore, or any agreement reached between the two of you concerning the re-investment of these profits? A. Well, it was our understanding * * *.

"Mr. Longan: Answer that 'yes' or 'no' please.

"A. Yes, the answer would be yes.

"Q. What was the agreement between the parties in that regard? A. Well, our agreement in that regard, was it would be more or less up to us mutually whether we wanted to invest, re-invest our profits in additional leases, that is, depending on the value of the land as we saw it, we could put in our own money, but our real plan was to promote other people in investing their money.

"Q. I understand that you could plow it back, but it was not obligatory on either of the parties. A. That is right."

Without repeating the testimony in detail it becomes apparent that the alleged agreement was extremely vague and uncertain at best.

Finding numbered II of the trial court is as follows: "That by the terms of the agreement between plaintiff and defendant neither the plaintiff nor the defendant were required to furnish or contribute any money or other property to be used in their contemplated business enterprise, and neither were required to devote any particular part of their time in furtherance of their business scheme. That it was understood and agreed between the parties hereto that all monies required in their business scheme were to be, and in fact were, furnished by the investor to whom the application for lease was assigned or to whom the lease was issued."

After a careful reading of the transcript the alleged agreement would appear to be in essence as follows: If the defend-

ant Moore could find open land suitable for leasing, and if the plaintiff Porter could find some person or persons willing to invest money in applying for a lease on such land, then any profit which might be derived therefrom would be divided equally between Moore and Porter. The testimony fails to disclose that either party was absolutely bound to do anything. In view of the state of the record we may not say that the trial court's finding of fact No. II is not sustained by the evidence adduced.

The appellant Porter complains that the district court erred ██ ██ in determining that the contract entered into between the parties did not constitute a partnership. However the existence of a partnership depends upon the intention of the parties which must be ascertained from all the facts and circumstances and the actions and conduct of the parties. Gaspar v. Buckingham, 116 Mont. 236, 153 Pac. (2d) 892. And in an equity case the supreme court will not reverse the findings of the lower court unless the evidence clearly preponderates against them. Wills v. Morris, 100 Mont. 514, 50 Pac. (2d) 862.

It was after the trial judge had observed the demeanor of the various witnesses while on the stand and heard their testimony that he made his finding No. XIII reading: ''The Court finds from the evidence in this action that the agreement be tween plaintiff and defendant did not create a partnership and that the parties hereto were not in fact partners. That the facts do not establish a joint adventure or trust relationship between said parties.''

The portions of the testimony of one party to this suit set ██ forth above indicate the uncertainty of the parties themselves as to the character, nature and terms of their alleged agreement. When the testimony in its entirety is considered the real intention of the parties becomes even more uncertain. There is ample substantial testimony to support the trial court's findings of fact.

The appellant Porter bases argument upon the assertion that ██ ██ a partnership has been admitted by both parties and

is therefore outside the scope of the issues framed by the pleadings. While both parties referred to the agreement as a partnership, in their pleadings and in their testimony, and both purported to have pleaded the alleged terms of the agreement nevertheless the allegation of "partnership" is but a legal conclusion and neither the trial court nor the appellate court will be bound by nomenclature to the exclusion of substance. As is stated in Flathead Lumber Corp. v. Everett, 127 Mont. 291, 308, 263 Pac. (2d) 376, 385, "when a general allegation is made followed by specific allegations regarding the same matter the specific acts are controlling and the pleader is confined in his proof to the specific acts pleaded."

Here notwithstanding the allegations by both parties that there was a partnership agreement, both freely testified to the facts constituting their agreement and the court was warranted in concluding that the facts did not show a trust relationship springing from the agreement such as exists in a strictly partnership agreement.

We find no merit in plaintiff's remaining specifications of error, nor do we find any prejudicial error in the record before us. Accordingly the judgment of the trial court is affirmed.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANGSTMAN, ANDERSON, and BOTTOMLY, concur.