ESTATE OF HENRY KEATING, DECEASED, THE STATE OF MONTANA, APPELLANT, v. TED KEATING, AS ADMINISTRATOR OF THE ESTATE OF HENRY KEATING, DECEASED, RESPONDENT.

No. 9639.

332 Pac. (2d) 906.

Submitted June 5, 1958. Decided Dec. 10, 1958.

Arnold H. Olsen, Atty. Gen., Wm. F. Crowley, Asst. Atty. Gen., H. O. Vralsted, Special Asst. Atty. Gen., H. J. Pinsoneault, Asst. Tax Counsel, Helena, H. O. Vralsted, argued orally, for appellant.

E. A. Blenkner, Columbus, Coleman, Jameson & Lamey, Billings, James M. Haughey, Billings, argued orally, for respondent.

MR. JUSTICE ANGSTMAN:

This appeal presents the question as to whether or not certain *inter vivos* transfers of real and personal property made by the deceased, Henry Keating, were made in contemplation of death and hence were taxable. The District Court ruled against the State's contention and held that the transfers were not made in contemplation of death and that they were not taxable. The State has appealed from that order so providing.

The facts giving rise to this controversy are as follows: Henry Keating died intestate on November 12, 1952, at the age of 78 years. On December 10, 1951, he gave an undivided one-seventh interest in his ranch, livestock, and equipment used in its operation, to each of his five children and his wife, retaining an undivided one-seventh interest for himself. The seven family members then organized a partnership and continued the farming and ranching operations as partners. The gifts were completed on December 10, 1951, and the donor paid a federal gift tax thereon.

Henry Keating during his lifetime, particularly during the latter part of his lifetime had traveled extensively in foreign countries. He had visited Hawaii, Alaska, Mexico and fourteen European countries. His son, Ted, after returning from Army service was made one of the two foremen on the ranch, the other foreman being the deceased's son-in-law. He trained these foremen to carry on the ranching operations and gave them added responsibilities as time went on. It was his desire

that his children should have increased incomes before his death and he desired also to curtail his own income by diverting part of it to the other members of his family so as to reduce the federal income tax. He had made substantial gifts over several years before dividing up his ranch in order that the children might enjoy a part of his estate while he was still living.

Henry Keating at first considered the formation of a family corporation but after learning of the federal law with reference to family partnerships concluded to organize a partnership. His motive for making the gifts was shown to be that he was thus enabled to relieve himself of much of the responsibility of operating the ranch, and at the same time give the other members of his family an adequate income to be enjoyed while he was still living, and to prevent the high federal income tax rates from consuming the income from the ranching operations. The arrangement also afforded him leisure time for travel and recreation. At the time of the transfers, Henry Keating was in sound physical condition and in good health and was then making preparations for a trip to Africa.

The plan of the deceased as above set forth could not have been accomplished by a testamentary disposition of his property to take effect at death. He desired that the partnership arrangement be accomplished during his lifetime. On these facts, as above stated, the District Court ruled that the motive of the deceased in making the gifts in question was associated with life and that the gifts were not made in contemplation of death.

Under our statute, section 91-4402, R.C.M. 1947, every transfer made within three years prior to the death of the grantor of a material part of his estate and without a fair consideration in money or money's worth, unless shown to the contrary shall be deemed to have been made in contemplation of death. Hence the only question for us here is, was the court justified in finding that the evidence was sufficient to overcome this presumption?

The State contends that this presumption cannot be overcome by the testimony of interested witnesses, relying upon the cases of McLaughlin v. Corcoran, 104 Mont. 590, 69 Pac. (2d) 597; and Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162. All that these cases hold is that this presumption is not overcome as a matter of law by the testimony of interested witnesses but that the question still remains one of fact to be determined by the trier of the facts. We cannot say that the District Court abused its discretion in finding that the gifts in question here were associated with life rather than with death, and hence were not made in contemplation of death.

In the case of Estate of Maggie M. Holding, the circumstances were much the same as those here. That case was recently decided by the tax court of the United States, being Docket No. 65341. The opinion was filed on July 31, 1958. There the donor was 87 years of age at the time of the gifts in question. The gifts were made in September and October of 1952, and in February of 1953. Gift return was regularly filed. The donor died on September 16, 1953. The first notice of symptoms of illness occurred within a period of approximately one month prior to being admitted to the hospital on July 19, 1953. Prior to this last illness she had enjoyed excellent health for many years. She had made a practice of giving substantial gifts of money to her children and grandchildren on occasions before the gifts in question. The decedent had deplored the practice of some of her associates of keeping their wealth until they died. She believed in sharing it with her descendants while she was alive and able to see them enjoy it.

The court ruled that none of the gifts were made in contemplation of death or in lieu of testamentary disposition; that the dominant motive which prompted decedent to make the several gifts was to see the donees enjoy the use of the money given to them while she was yet living. The same reasoning applied in that case fits this case. The court in that

case called attention to the case of Bradley v. Smith, 7 Cir., 1940, 114 F. (2d) 161, where the donor was 85 years of age and where the gift was made within four months prior to his death and yet held that the same was not made in contemplation of death. The court also referred to the case of Levi v. United States, 1936, 14 F. Supp. 513, 83 Ct. Cl. 284, wherein the decedent was a man 75 years of age and where death resulted from cancer two months after the gifts were made, and yet the court held that they were not made in contemplation of death. Other cases holding that similar facts were sufficient to sustain a finding that the motive was associated with life rather than death are the following: First Nat. Bank of Kansas City v. Nee, D.C.W.D. Mo., 67 F. Supp. 815; Estate of Benjamin P. O'Neal, P-H 1947, T. C. Mem. Dec. par. 47, 167; Estate of Genevieve Brady Macaulay, 3 T.C. 350; Estate of Anna Scott Farnum, 14 T.C. 884; Estate of Charles J. Rosebault, 12 T.C. 1; Constance McCormick, Executrix, 38 B.T.A. 308; Estate of Julius Bloch-Sulzberger, P-H 1947, T.C. Mem. Dec. par. 47, 304; Estate of Herbert G. Larsh, P-H 1947, T.C. Mem. Dec. par. 49, 221; Thomas A. Scully, Executors, 34 B.T.A. 218; Blakeslee v. Smith, D.C. Conn., 26 F. Supp. 28, affirmed 2 Cir., 110 F. (2d) 364; Fair v. United States, D.C. W.D. Pa. 59 F. Supp. 801; Greer v. Glenn, D.C.E.D. Ky., 64 F. Supp. 1002.

This court under very similar facts has reached the conclusion that the court was justified in concluding that the gifts were not made in contemplation of death, but for purposes associated with life. In re Warren's Estate, 128 Mont. 395, 275 Pac. (2d) 843.

Under the authority of these cases, as well as others which might be cited, including that of United States v. Wells, 283 U.S. 102, 51 S. Ct. 446, 75 L. Ed. 867, the court was warranted in concluding that the gifts in question here were not made in contemplation of death or in the nature of a final disposition or distribution of the estate of donor as contemplated in section 91-4402, and that the presumption to the contrary was

overcome by the evidence. The order appealed from is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE CASTLES, concur.

MR. JUSTICES BOTTOMLY and ADAIR:

We dissent:

Henry Keating died on the 12th day of November, 1952, at Columbus, Stillwater County, Montana, where all of his estate and property was located. Less than one year prior to his death, Henry Keating gave by an *inter vivos* transfer an undivided one-seventh interest in certain real and personal property to his wife, and a like interest to each of his five children. He retained a one-seventh interest for himself. The value of the transferred interests was $210,004.41. When the petition for determination of inheritance tax was filed during the probate of Henry Keating's estate, the value of these gifts was not included. The State Board of Equalization objected to such omission and pursuant to their objections a hearing was had to determine whether such gifts were taxable by the inheritance tax laws of the State of Montana. The Board of Equalization asserted that the value of the gifts should be included for inheritance tax purposes under the provisions of section 91-4402, R.C.M. 1947, which provides:

"When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death. *Every transfer by deed, grant, bargain, sale or gift, made within three (3) years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without a fair consideration in money or money's worth shall,* unless shown to the contrary *be deemed*

*to have been made in contemplation of death within the mean-
ing of this section.''* Emphasis supplied.

The Board contended that the applicable part of the statute
in this case was the latter provision wherein gifts made within
three years of the death of a decedent are deemed made in con-
templation of death unless it is shown to the contrary that the
transfer was not in fact made in contemplation of death. The
statute imposes the burden of proof upon the estate to make
such a showing, *where as here, the transfers were made within
three years of the death of the decedent.*

Relying upon the presumption that the transfers in question
*were in contemplation of death* the State offered no other evi-
dence. To make a showing that the transfers were not in con-
templation of death the estate introduced testimony. The lower
court after hearing the testimony held that the evidence intro-
duced by the estate successfully rebutted the Board's presump-
tion that the gifts were in contemplation of death and that since
it had been shown that the gifts were not made in contemplation
of death, the value of the transferred property was not subject
to tax. The Board appealed from this decision. The question
for determination on appeal is whether the evidence offered
by the estate sustains the contentions of the estate.

In our opinion the evidence offered fails to sustain the estate's
contention, is insufficient to overcome the presumption of the
statute, and *actually affirmatively proves that the gifts were in
the nature of a final testamentary distribution and therefore
subject to inheritance tax.*

In any contemplation of death case the question as to whether
transfers were for motives associated with death is always one
of fact.

The estate asserts that the evidence produced at the hearing
to determine inheritance tax proved that the compelling motives
for the transfers are as follows: (1) To reduce income taxes;
(2) To invest his *wife* and children with property and income
which could be used at once and during his lifetime; (3) To
divest himself of responsibility of management of the business,

retain a share in the business and its income and give him time for leisure and travel.

(1) The reduction of Income Taxes. This motive of itself is generally held to be a legitimate motive if it is established that this is the dominant reason for the gift. The estate asserts that the decedent created a family partnership for the express purpose of dividing the income from the ranch among himself, his wife, and each of his five children. Thus the *first* thing necessary to prove was the establishment of the family partnership as a legal entity. Admittedly the decedent on December 10, 1951, divided certain real and personal property of which he was the sole owner into seven undivided shares. Admittedly the recipients of the six shares formerly owned by the decedent paid no consideration for the share received and *thus were the donees of a gift*. The seven owners were tenants in common as a result of the transfer of December 10, 1951. Did this make them partners? No articles of partnership were introduced! No partnership income tax returns were introduced! R.C.M. 1947, section 63-107, subsection (2) provides:

"(2) Joint tenancy, tenancy in common, tenancy by the entireties,, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property."

The creation of the tenancy in common and the gift of themselves do not prove the creation of the partnership.

The court in Porter v. Moore, 130 Mont. 259, 265, 300 Pac. (2d) 513, 517, quoting Gaspar v. Buckingham, 116 Mont. 236, 153 Pac. (2d) 892, held: "However the existence of a partnership *depends upon the intention of the parties which must be ascertained from all the facts and circumstances and the actions and conduct of the parties.*" Emphasis supplied. And see also Denton v. Salveson, 132 Mont. 431, 317 Pac. (2d) 1085.

Due proof of the creation of the partnership must show more than a creation of a tenancy in common, it must affirmatively show the *intention of all concerned to join together to form a*

*partnership.* If the intention to form a partnership can be shown, it is not generally necessary that the partnership agreement be in writing. *But the purported partnership sought to be shown here was a special type of partnership.*

It is here contended by the estate that the purported family partnership was created under the provisions of the Revenue Act of 1951, 26 U.S.C.A. sections 191, 3797. It is asserted that the passage of the Revenue Act of 1951 opened the way for creation by the Keating family of a valid family partnership implying of course that a valid partnership could not have been created prior to that time by this family. The Revenue Act of 1951 did not simply make all family partnerships valid, *it set out certain rules which if followed would create a valid family partnership.* The rules apply only where capital is a material income producing factor. *But where, as here, a gift is present it is also required that an allocation of income be made as between the partners.* That is, the Act requires that the partnership income be allocated in accordance with capital ownership and services performed. The donor must be compensated for the services he performs and then the residue is to be divided among the partners in proportions to their capital accounts. This allocation *must* be set up *in order to comply with the Federal Revenue Act of 1951.*

While under state law, *if the donor and donees had proved their intent to enter into a partnership,* a valid partnership could have been created. Yet such a partnership prior to 1951 would not necessarily have been valid for income splitting purposes under the Internal Revenue Code. The case law relating to family partnerships for Federal Income tax purposes prior to 1951 was in a state of uncertainty. The Supreme Court of the United States in 1946 in the cases of Commissioner of Internal Revenue v. Tower, 327 U. S. 280, 66 S. Ct. 532, 90 L. Ed. 670, and Lusthaus v. Commissioner, 327 U. S. 293, 66 S. Ct. 539, 90 L. Ed. 679, had set out certain criteria *which had to be met to control the validity of family partnerships.*

It was generally believed these were the sole criteria which

must be met before a valid family partnership could be created. Yet in 1949 the Supreme Court held in Commissioner of Internal Revenue v. Culbertson, 337 U. S. 733, 69 S. Ct. 1210, 1214, 93 L. Ed. 1659, that the criteria of the Tower and Lusthaus cases, supra, were merely circumstances to be taken into consideration and that the crux of the question as to validity of the family partnership was whether considering all the facts ''the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.'' This rule however was so broad that it did little to bring order to the law. For that reason specific legislation was enacted in the Revenue Act of 1951.

It is apparent then, that to prove a partnership was created to save income tax that compliance with the Federal Revenue Act *be shown in addition to showing the intention of all parties to the partnership. The actual formation of the partnership, including in this case the allocation of income to the donor must be proved. Yet not one bit of evidence was introduced to prove that the Revenue Act of 1951 had been complied with in order to show a valid family partnership for income tax purposes had been created, because in this situation to show the allocation it becomes essential to have a written instrument. The validity of the partnership depends upon compliance with the Act. Yet no written instrument was introduced.* To prove the existence of the partnership, *the intention to create a partnership must exist.* On this point two of the purported partners testified. The widow, whose gift saved no income taxes, testified that the decedent decided to make a transfer in 1951 after reading about the Federal Revenue Act provisions. The decedent and his wife, *and only the decedent and his wife,* then consulted an attorney who drew the instrument transferring the property to the widow and five children. *This transfer is all that was accomplished.* In the widow's own words what was done was this: ''We went in and talked about *giving it*—we swore them all to secrecy. We wanted it to be Christmas presents for the children. We did not want them to know what we were doing until

the papers were all signed." *Those sworn to secrecy were the attorneys.* Ted Keating, the son of decedent, testified: "Q. Was the formation of a family partnership ever discussed with you prior to December 10, 1951? A. *I do not think a partnership ever was. He was considering incorporation up to that time.* It may have been discussed, *but I do not know.*"

He further testified: "Q. Did you ever have discussions with him about these particular gifts, which are the subject of this hearing today, and about the formation of a family partnership? A. *No, I do not think I ever did.*"

From these purported partners' own testimony, it is evident that the children were not informed of the *alleged partnership* on December 10, 1951. *Without their intention to join the partnership none was created. There is no evidence at all that a partnership was formed after that date. You cannot form a partnership with a person who is not informed that he is to be a partner since he cannot have an intent to join a partnership when he does not know it exists.* The estate failed to prove the formation of a partnership *and in fact conclusively proved that no such partnership was formed on December 10, 1951, or on any other date.* If the gift was delivered on December 10, 1951, or at all, all that was accomplished was the transfer of property. *The motives of the decedent must be proved by what he did, not by what you say he did.* Although he made a gift of his property, there is no proof he formed a partnership *with the intention to save income taxes* or for any other purpose, as there is no proof he ever formed a partnership at all.

(2) Investment of wife and children with property during lifetime. The proof of this motive by the decedent rests again upon proof of the creation of a *valid family partnership.* Failing to prove such was created fails to prove the motive existed. In addition any predisposition of property will give ownership of such property to the donee but ownership during the decedent's lifetime does not therefore mean the gift was not a substitute for a testamentary disposition. There is some contention that these gifts were part of a gift program of giving

to the children. Ted Keating, the decedent's son, who worked on the ranch testified as to these bonuses: "We got a bonus for working there that our sisters did not get." Listed as an asset of the estate is a *note* from a married daughter, Mrs. Francion Paris, in the amount of $3,000 made in September 1952. *This loan made after the purported partnership was supposed to be formed is inconsistent with the theory that Mrs. Paris owned a one-seventh interest in the income from the ranch or that she was regularly the recipient of a bonus.*

To divest himself of responsibility of management of the business, retain a share in the business and its income and give him time for leisure and travel. For the five years previous to the gifts Henry Keating had had his son and his son-in-law actually living at the ranch, working there.

The widow testified that "He [Henry Keating] managed the ranch, he called himself the manager and the boys the foremen." *There was no change in this situation after the gifts.* He had already transferred some authority to these boys and the gift did not further accomplish a transfer of authority. If the gift was to give the son more authority why was the son-in-law omitted? He had worked for over nine years on the ranch, yet no mention was made of him in the purported partnership, nor in the *transfer of authority.* Henry Keating was not freed of responsibility by the gift, this had been accomplished prior to this time without the gift. The gift did not give him an interest in the business, he had that at all times before. The gift did not suddenly allow him time for leisure and travel. As to his conduct before the gift, Mrs. Keating testified:

"Q. Tell us what kind of trips you took in the years immediately preceding 1951. A. *We went to Europe. We visited fourteen countries in Europe. We went to Mexico City. We went to Cuba and we went to Alaska. We went up the Alaskan highway. We were in Hawaii, we did quite a bit of traveling for several years."*

The estate *did not prove that such motives were the dominant*

*motives for the transfers.* What Henry Keating did was to transfer in his old age, a major portion of his estate to the natural objects of his bounty for the following reasons as testified to by the widow: "Did you have any other reason for making the gifts? A. Because we wanted the children to have the place. The only other reason I can think of was we did not want to give one one parcel and another another parcel, because we thought they might get hard up and one would want to sell their part and break up the ranch. We built up a good ranch and thought it better to keep it that way and give the children the whole thing rather than some of them a part of it."

*This whole scheme was nothing more than a substitute for a testamentary disposition.* The estate has failed to prove that "life" motives inspired the gift. We would reverse the district court and hold that the value of the gifts is subject to inheritance tax. In the event the majority opinion prevails, this inheritance tax law, sections 91-4401 to 91-4450, R.C.M. 1947, is, for all intents and purposes for which it was enacted by our legislature, worthless. In the event the legislature desires to plug some of the tax loopholes, here is an ideal opportunity.