No. 82-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

WALLACE J. LINDQUIST and DAWN
LINDQUIST, individually, and
WALLACE J. LINDQUIST, as Personal
Representative of the Estate of
DANIEL R. LINDQUIST,

                    Plaintiffs and Respondents,

        -vs-

KEITH MORAN, JOHN McFADDEN and
COUNTY OF JEFFERSON,

                    Defendants and Appellants.

Appeal from:   District Court of the Fifth Judicial District,
               In and for the County of Jefferson,
               The Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellants:

            Worden, Thane & Haines; Robert J. Phillips,
            Missoula, Montana
            James E. Purcell, Butte, Montana

    For Respondents:

            John F. Iwen, Great Falls, Montana

                        Submitted:   January 12, 1983

                         Decided:    March 31, 1983

Filed:  MAR 31 1983

*Ethel M. Harrison*
_____
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

A Jefferson County jury returned a verdict in favor of defendants McFadden and Jefferson County in a personal injury case arising out of a traffic accident. The District Court granted plaintiff's motion for a new trial. McFadden and Jefferson County now appeal.

In the early morning hours of June 25, 1976, Jefferson County deputy sheriff McFadden stopped a vehicle being driven toward Whitehall from the Boulder area by a Wendell Gary Schloss after observing erratic driving patterns. McFadden administered a coordination test which Schloss failed. Schloss was then arrested for driving under the influence of an intoxicating beverage. Schloss's passengers were plaintiffs' decedent (Daniel Lindquist), Keith Moran, and Mark Yochim. McFadden had a legal intern, Mark Murphy, riding with him.

Since McFadden did not have a breathalyzer test available, he called Whitehall Chief of Police McGuire and asked McGuire to deliver one to the scene of arrest. After administering the breathalyzer, McFadden asked Schloss how he wanted the vehicle transported, since it could not be left on the shoulderless frontage road. He offered to have Murphy drive it to Boulder or to have it towed to either Whitehall or Boulder. Schloss requested that his friend, Moran, be allowed to drive the car to Boulder. McFadden asked McGuire to check Moran out to see if he was all right to drive. McGuire and Murphy each talked to Moran for three to five minutes, determined that he was "okay to drive," and McGuire reported that fact to McFadden.

The Schloss vehicle preceded the county unit toward

-2-

Boulder with Moran driving and Yochim and Lindquist as passengers. About twenty to thirty minutes after leaving the scene of Schloss's arrest, approximately twenty miles from Whitehall, the county unit stopped to let Schloss relieve himself. Upon proceeding, it came upon Schloss's vehicle, which had been driven off the road. Lindquist received severe head injuries in the accident and died nine days later.

Plaintiffs filed suit against Moran and then entered into settlement agreements with his insurance carrier and Schloss's carrier. The agreements provided that the settlements were loans and that the carriers would recover up to 25 percent of any net award recovered by plaintiffs from Jefferson County and/or McFadden. McFadden and Jefferson County were then added to the action. The agreements were secret and were discovered only after McFadden and Jefferson County served interrogatories upon plaintiffs asking about any releases or payments. The interrogatories were objected to by plaintiffs and Moran, and appellants were required to file motions to compel answers to the interrogatories and to compel production of documents. A motion in limine was made by plaintiffs to keep any mention of the settlement agreements from the jury. The District Court granted that motion.

The matter was tried before a Jefferson County jury. A verdict was returned on December 14, 1981, in favor of McFadden and Jefferson County. It assessed 75 percent negligence to Moran and 25 percent to plaintiffs' decedent and awarded total damages of $25,692.60 for medical expenses, funeral expenses, and loss of comfort, protection, affection, and society. No damages were awarded for pain

and suffering, for loss of established course of life, or for loss of future earnings. Plaintiffs moved for a new trial, which was granted by the District Court.

Appellants and respondents present the following four issues on appeal:

1. Whether the District Court erred in granting the motion for new trial;

2. Whether the District Court erred in giving Instruction No. 32, which included discount tables, but no directions on their use;

3. Whether the jury verdict was inconsistent; and,

4. Whether the secret indemnification agreements between plaintiffs and the insurance carriers ("Mary Carter" agreements) are proper subjects for inquiry upon any retrial involving McFadden and Jefferson County.

We will address only the first issue, which is dispositive of this case.

Plaintiffs, on January 28, 1982, moved for a new trial for the following reasons, which they alleged materially affected their substantial rights:

1. Irregularity in the proceedings of the court, jury, or adverse parties or any order of the court or abuse of discretion by which the plaintiffs were prevented from having a fair trial.

2. Insufficiency of the evidence to justify the verdict or other decision and that it is against law.

3. Error in law occurring at the trial and excepted to by the plaintiffs.

Pursuant to section 25-11-104, MCA, plaintiffs' counsel filed an affidavit in support of the motion. It alleged:

-4-

McFadden's negligence as a matter of law for allowing Moran to drive and for not checking the registration of the Schloss vehicle to establish its ownership; an inconsistent verdict that improperly found plaintiffs' decedent 25 percent negligent when he had no control over the operation of the vehicle; that the District Court improperly allowed the jury to use discount tables provided by defendants which had no instructions attached; and that the low damages award reflected bias and prejudice on the part of the jury and its refusal to "follow the evidence" presented.

The District Court granted plaintiffs' motion for a new trial "upon good cause shown." In its opinion in support of the order, the District Court held that McFadden, an agent of Jefferson County, was negligent as a matter of law for allowing Moran to drive Schloss's automobile into Boulder while drunk, and that the court should have directed a verdict in favor of plaintiffs and against McFadden and Jefferson County. It also ruled that plaintiffs' decedent had no control over the car in which he was riding and could not, therefore, be contributorily negligent. It finally held that the amount of the verdict was "inadequate, shocking and could only have been arrived at through bias, prejudice and passion against the plaintiffs." We disagree and vacate the District Court's order granting a new trial.

Plaintiffs' motion for a new trial was based on the above three grounds as provided in section 25-11-102(1), (6) and (7), MCA. In granting a motion for new trial, the District Court must set forth the grounds with particularity. Halsey v. Uithof (1975), 166 Mont. 319, 326, 532 P.2d 686, 689-690. The first ground was irregularity in the proceed-

ings of the court, jury or adverse party, or any order of the court or abuse of discretion by which the plaintiffs were prevented from having a fair trial. No facts were set forth supporting this allegation in plaintiffs' affidavit. This ground was not mentioned in the District Court's order and opinion. Plaintiffs' motion with regard to this ground was inadequate. Montana Williams Double Diamond Corp. v. Hill (1978), 175 Mont. 248, 256, 573 P.2d 649, 654.

Nor was reference made in the order and opinion to plaintiffs' third ground: error in law occurring at the trial and excepted to by the plaintiffs. It appears from plaintiffs' affidavit that this basis was founded upon plaintiffs' objection to the discount tables. Again, no mention of this appears in the District Court order and opinion.

The order for new trial thus appears to be based solely upon an "insufficiency of the evidence to justify the verdict or other decision, and that is against law."

McFadden and Jefferson County can be held negligent as a matter of law only if the facts unequivocally demonstrate that McFadden breached a duty of care to plaintiffs' decedent by allowing an apparently intoxicated person to pilot the vehicle into Boulder. The facts do not so demonstrate such a breach.

In considering a motion for new trial, the trial court is not to weigh the evidence where conflicting evidence is presented. Yerkich v. Opsta (1978), 176 Mont. 272, 274, 577 P.2d 857, 859. Rather, the trial court's discretion to grant a new trial for insufficiency of the evidence is exhausted when it finds substantial evidence to support the

-6-

verdict. Stenberg v. Neel (1980), ____ Mont. ____, 613 P.2d 1007, 1011, 37 St.Rep. 1170, 1175; Kincheloe v. Rygg (1968), 152 Mont. 187, 191, 448 P.2d 140, 142. Where conflicting evidence is present, it is an abuse of the trial court's discretion to grant a new trial. Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 128, 580 P.2d 915, 919, overruled on other grounds, 180 Mont. 233, 590 P.2d 117. We will not substitute our view of the evidence for that of the jury where that evidence furnishes reasonable grounds for different conclusions. Rock Springs Corp. v. Pierre (1980), ____ Mont. ____, 615 P.2d 206, 211, 37 St.Rep. 1378, 1384. Finally, this Court must view the evidence in the light most favorable to the prevailing party below. Anaconda Co. v. Whittaker (1980), ____ Mont. ____, 610 P.2d 1177, 1179, 37 St.Rep. 902, 905.

Here, substantial evidence supports the jury verdict in favor of McFadden and Jefferson County. McFadden asked officer McGuire to "check the kid out." He saw McGuire go up to the Schloss vehicle and presumed McGuire was doing so. McGuire reported that Moran was all right and that he did not smell alcohol on Moran's breath. We note that the breathalyzer test given to Schloss could not be read at the scene.

McGuire, Whitehall chief of police for six years, testified that he talked to the individuals in the vehicle. He looked inside the car and saw no open containers of alcohol or any other activity that indicated a law was being violated. Murphy stood beside McGuire as he talked to Moran next to the car. McGuire asked to see Moran's driver's license, checked to see if he could smell his breath, had

him walk around, and had him get his driver's license out of his wallet. McGuire concluded he was not intoxicated.

Murphy stood within twelve to eighteen inches of Moran and did not smell alcohol. Nor did he see any beer cans or other alcohol containers in the car. He watched Moran as Moran walked around, spoke, and took his driver's license out of his wallet. Moran's speech was not slurred, he had no difficulty removing the driver's license, his eyes were not bloodshot, and he did not stumble as he walked. Murphy heard McGuire inform McFadden that Moran was "okay to drive." He also heard Schloss say that he did not want Murphy to drive his car but wanted Moran to drive it.

Neither McFadden nor Murphy noticed any erratic driving as they followed behind Moran for some twenty to thirty minutes as he drove toward Boulder. The highway patrol officer that investigated the scene of the accident was the only witness that noticed a "slight smell" of alcohol on Moran's breath. He stated, however, that he did not have reasonable grounds at that point to believe that Moran was driving under the influence of alcohol. Moran was not so cited. In the highway patrolman's opinion, the accident occurred when Moran looked in the rear view mirror as the car rounded a curve.

The certified emergency medical technician (EMT) who responded to the scene of the accident performed an initial patient assessment of Moran that involved listening very carefully about Moran's mouth for any breathing difficulties or other evidence of respiratory problems. He smelled no alcohol and determined that Moran was alert and oriented. Based upon training to determine if signs of intoxication

are present for the purpose of providing medical treatment and upon his observations of Moran, the EMT stated that he did not believe Moran was intoxicated.

Finally, defendants McFadden and McGuire introduced unrebutted expert testimony from a highway patrolman which supports their position that McFadden's actions in turning the vehicle over to one of Schloss's passengers were reasonable.

Substantial evidence supports the jury verdict. The District Court abused its discretion in granting a new trial. In light of the settlement agreements that fix liability among Moran, the insurance carriers, and plaintiffs, the questions raised on damages are moot.

The order of the District Court granting a new trial is vacated and the judgment on the jury verdict reinstated.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

I dissent. The majority has searched the record to find "conflicting evidence," but all of it is irrelevant. The plain truth is that the deputy sheriff of Jefferson County turned a vehicle over to a drunk to drive, and as a result Daniel Lindquist was needlessly killed.

The duty of the deputy sheriff when he arrested Schloss for drunk driving, was to search his automobile for evidence of alcoholic containers. Section 16-6-105, MCA. The deputy did not search the vehicle. The duty of the deputy sheriff was to impound the vehicle in which the alcoholic beverage is found. Section 16-6-105, MCA. He did not impound the vehicle. Instead he let the drunk driver dictate who should drive the automobile to Boulder.

Self-servingly now, all the officers testify that they saw no reason for Moran not to drive. But this testimony flies in the face of what the accident revealed 40 minutes later. Moran smelled of alcohol; there was spilled beer all over the back seat; there was a quantity of beer cans strewn around. How can the majority call the evidence conflicting, in the face of the physical evidence that the authorities did not perform their duty, the performance of which might have saved a life? Undoubtedly, between the time the vehicles left the arrest scene until the Vega ran off the road, some occupants of the car were not only then intoxicated, but were continuing to consume beer under the very nose of the deputy sheriff in the following vehicle.

The highway patrol officer actually testified that the fact that Moran had been drinking was "not really" a

contributing factor to the accident in the face of the physical evidence here.

Small wonder that the District Court ordered a new trial, and indicated he should have directed a verdict against the deputy and the county.

The record is bare of any evidence that the decedent was negligent before or at the accident. Yet the jury found him 25 percent negligent. This was a factor on which the District Court relied to grant a new trial. The jury granted the decedent nothing for his pain, suffering, or loss of earnings. This was another factor relied on by the District Court. The District Court was correct in granting a new trial.

The result is that the parents of the decedent get nothing for this misjudgment of public duty. I cannot agree.

_____
                  Justice

We join in the foregoing dissent.

_____
                  Justices