No. 88-378

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

KATHRYN ANN NELSON,

             Plaintiff and Respondent,

     -vs-

FAIRMONT HOT SPRINGS RESORT, INC.,

             Defendant and Appellant.

APPEAL FROM:  The District Court of the Second Judicial District,
              In and for the County of Silver Bow,
              The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Ross P. Richardson; Henningsen, Purcell, Vucurovich
          and Richardson, Butte, Montana

     For Respondent:

          Clinton H. Kammerer, Missoula, Montana

Submitted on Briefs:  Oct. 6, 1988

Decided: November 1, 1988

Filed:

FILED

'88 NOV 1 AM 10

CLERK
MONTANA SUPREME COURT

_____
             Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Fairmont Hot Springs, Inc. (Fairmont), appeals an order of the Second Judicial District, Silver Bow County, setting aside a jury verdict for the defendant and ordering a new trial for plaintiff Kathryn Nelson (Nelson) on her personal injury suit.

The issues on appeal are as follows:

1. Did the District Court abuse its discretion by setting aside the jury verdict in favor of the defendant because there was substantial credible evidence in the record to support the verdict?

2. Did the District Court err in failing to give Defendant's Proposed Instruction No. 24 on subsequent injuries and damages?

3. Does the 45-day limit imposed by Rule 59, M.R.Civ.P., apply to plaintiff's post-trial motions after remand by this Court directing the District Court to reconsider those motions?

We reverse.

Nelson was on the Fairmont premises on December 30 and 31, 1984, while visiting relatives, who leased a Fairmont time-share condominium. After dinner and drinks, Nelson and her companions decided to go swimming in the Fairmont pools. Fairmont closes its pools to the general public at 10:00 p.m. However, hotel guests and condominium owners can still access the pools with a special key. It was just after midnight when they accessed the pools with one of these keys.

After swimming indoors for a short time, they decided to go outside to the outdoor pool to experience the cold. Although it was a cold December evening, near zero degrees, the Nelson party wanted to swim in the outdoor heated pools

2

while experiencing the cold weather around them, and they went outside for this express purpose.

While hurrying back indoors along the pathway leading to the indoor pool, Nelson slipped and fell and injured herself. She made no report to the resort management of her fall and injuries; however, she filed complaint against them on May 5, 1986, and a jury trial was had in September 1987. The jury returned a defense verdict. Plaintiff made post-trial motions for judgment N.O.V. or, in the alternative, for a new trial.

The District Judge ordered a new trial and defendants appealed in October 1987. This Court remanded that appeal on January 12, 1988, with instructions for the trial judge to reconsider those post-trial motions and to make specific findings if either of the motions were granted. It was not until June that the District Court held another hearing and then adopted verbatim plaintiff's findings of fact and conclusions of law to support a new trial. The findings and conclusions determined that there was insufficient evidence to support the jury's defense verdict. The court issued an order for a new trial pursuant to § 25-11-102(6), MCA. We disagree and vacate the District Court's order granting a new trial.

Because we reverse on Issue 1, there is no need to discuss appellant's further issues.

## I. NEW TRIALS

(a) Standard of Review

The District Court abused its discretion in ordering a new trial because there was substantial credible evidence in the record to support the jury's verdict.

Granting a new trial is discretionary with the trial judge; however, this discretion is not without limitation.

3

As we stated in Kincheloe v. Rygg (1968), 152 Mont. 187, 191, 448 P.2d 140, 142:

> Although the granting of a new trial for insufficiency of the evidence is a discretionary power of the trial court which will not be disturbed except for abuse of discretion, the trial court's discretion is exhausted when it finds substantial evidence to support the verdict.

Thus, if there is substantial credible evidence to support the jury's verdict, it must stand. Townsend v. State of Montana (Mont. 1987), 738 P.2d 1274, 44 St.Rep. 1014.

This Court has defined substantial evidence as any relevant evidence which a reasonable mind might accept as adequate to support a conclusion. State v. Lamb (1982), 198 Mont. 323, 646 P.2d 516. A review of the trial transcript reveals such substantial evidence. The jury which heard the defendant's testimony determined it to be credible. "If there is conflicting evidence in the record, the credibility and weight given to such conflicting evidence is the province of the jury and not of this Court." Wilkerson v. School District No. 15, Glacier County (Mont. 1985), 700 P.2d 617, 621, 42 St.Rep. 745, 748. The evidence reviewed by this Court must be viewed in a light most favorable to the prevailing party. Gunnells v. Hoyt (Mont. 1981), 633 P.2d 1187, 1191, 38 St.Rep. 1492, 1495. We will now review the evidence which substantially supports the jury verdict. Because sufficiency of the evidence is the critical question on appeal, a detailed review of the record is necessary.

(b) The Trial Record

Nelson's complaint alleged that Fairmont was negligent in failing to warn the plaintiff of the hazardous condition

on the deck area around the outside pool and by failing to maintain and police the same.

The defendant maintained that it took all reasonable steps to eliminate hazards and adequately warned of any possible hazards. Additionally, it asserted that Nelson assumed the risk of swimming past 10:00 p.m. at night and her accident was caused by her own negligence by swimming after consuming alcohol and by failing to use ordinary care in negotiating the obviously icy pathway. Lastly, the defense contended that the head, neck, back and shoulder injuries suffered by Nelson were not proximately caused by her fall at Fairmont since she was subsequently involved in an altercation in which her nose was broken and then involved in a car wreck which rendered her unconscious.

Testimony at trial was conflicting on some points. This jury, based on the evidence, chose to believe the defendant, and that is their right. The trial judge is not allowed to weigh the evidence on a motion for new trial when conflicting evidence is presented. Lindquist v. Moran (1983), 203 Mont. 268, 662 P.2d 281. Such is the province of the jury. It is an abuse of discretion for the District Court to grant a new trial under the facts of this case. Lindquist, 662 P.2d at 285.

It was clear that guests who swam after 10:00 p.m. did so at their own risk. Ten o'clock p.m. was the time when the lifeguards went off duty and the doors were locked to the general public. There were large signs on the entrance to the pool area and on the door to the outside pool stating this policy.

Dan Klemann, executive assistant at Fairmont, testified regarding the pool facility and procedures of maintenance. He testified that on the roof of the adjacent building there are two 400-watt Mercury vapor lights which light the outdoor

5

walkway to the pool. Pictures of the same were admitted into evidence and given to the jury to show the well-lit view of the walkway.

Jake Maciag, a certified lifeguard employed at Fairmont during the time in question, also testified regarding the specific winter operation of Fairmont's outdoor pools. After Labor Day, the pool was only open to the general public from 5:00 p.m. to 10:00 p.m. during the week, and from 1:30 p.m. to 10:00 p.m. on weekends. Additionally, doors to the outside pool from the men's and women's dressing rooms were sealed and access to the outdoor pool came only from one main door connecting the indoor pools. The door always had a large warning sign on it which read "CAUTION, ICE" or "WATCH FOR ICE." This door swung out to the pool so that anyone going to the outdoor pool necessarily would have to see the sign.

Additionally, there was a specific procedure for "clearing the path" from the door to the edge of the outdoor pool. Lifeguards would come to work at 1:30 p.m. and immediately clean the pathway from the building to the edge of the outdoor pool. If ice was present, they would use a pump to force hot water onto the area, and the ice would be chipped away by hand, if necessary. Then, the path would be vacuumed. Between 1:30 and 10:00 p.m., lifeguards would maintain the pathway in this manner, policing it every twenty minutes, keeping it free from snow and ice. After the sun went down, it made it more difficult to keep the ice off in the evenings. In that case, rubber-backed mats were thrown over the ice. If these became encrusted with ice, they were also cleaned.

The lifeguards went off duty at 10:00 p.m. At that time, they would place clean mats over the ice and make certain the warning signs were on the door. The pool was

closed to the general public at that time and heavy flood-lights lit the path making any ice that was present readily visible.

Barbara Barr, the pool manager in 1984, also testified at trial. Barr was a certified lifeguard and she utilized both the Red Cross and the State Department of Health in developing safety procedures for her pool operation. Fairmont was inspected twice a year by officials from the Health Department and met all standards promulgated by the Department and passed on all safety requirements. Additionally, a fire marshal also inspected the premises and was satisfied with its condition and maintenance.

Barr also testified as to why these procedures were enacted as opposed to alternatives. Sand could not be used on this path because it would clog the pool pumps, as would de-icer solutions and rock salt. Additionally, de-icer and rock salt would burn the patron's bare feet. A canopy over-head to protect from falling snow would block the flood-lights, without really curing the problem because the ice on the path also formed from water dripping off the patrons as they walked from pool to pool.

Both Barr and Maciag testified that they had crossed this pathway on numerous occasions without incident and that it was not a hazard, but could be negotiated without problem if the swimmer used care. Both enforced the rules promul-gated by Fairmont and neither were aware of any accident on December 31, 1984, because it had not been formally reported.

Two hundred fifty thousand people per year visit the Fairmont resort, and a formal accident reporting procedure is used there. Any injured patrons are requested to report the incident and complete an accident report form. Fairmont's records show no record of Nelson's December 31, 1984, acci-dent report.

Plaintiff Nelson testified that she and her companions saw the ice on the pathway in the early morning hours of December 31, 1984, and were aware that it was slippery. All crossed the path safely to enter the outside pool. Plaintiff presented conflicting testimony as to how much alcohol she consumed that night and when. She did not see the warning sign.

Plaintiff also presented expert testimony by Gerry Van Ackeren that the icy conditions of an outdoor pool constituted a substantial hazard to the users of the pool. Plaintiff makes much of the fact that although this evidence was controverted by many Fairmont professional employees, it was not controverted at trial by any qualified expert produced by Fairmont to testify.

There was ice present on the walkway in the early morning hours of December 31, 1984. This condition was open and obvious. Certainly there was a jury question as to whether a hazard existed; whether Fairmont negligently allowed the hazard, if any, to exist; and whether it adequately warned patrons of the possible hazard. The jury was properly instructed on these issues and determined them accordingly based on the foregoing substantial credible evidence. The jury's verdict of "not negligent" is supported by the evidence of precautionary steps taken and warnings given by Fairmont. This Court will not substitute its judgment for that of the jury when no misconduct or abuse of discretion has been shown. We do not hesitate to reinstate a verdict supported by substantial credible evidence. Nelson v. Hartman (1982), 199 Mont. 295, 648 P.2d 1176.

Based on the lengthy trial record and the foregoing evidence recited, appellant convinces this Court that the District Court abused its discretion by setting aside the verdict and awarding a new trial.

The order granting new trial is vacated. The jury's verdict of September 22, 1987 is reinstated.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_(signature)_

_R. C. McDonough_

_R. C. Gulbrandson_.
Justices